MARIA DOGGETT, APPELLANT, VS. ISAIAH D. HART AND OTHERS, APPELLEES.

1. Although as a general rule, the plaintiff in ejectment must show a legal title to enable him to maintain the action, yet in particular cases, where ejectment is brought upon the demise of a *cestui que trust*, the jury will be permitted to presume that the trustee has made a regular surrender of estate, in every case where the purposes of the trust estate have been satisfied, or the beneficial occupation of that estate by the possessor induces a supposition that a conveyance of the legal estate has been made to the party beneficially interested, or where the trust is a plain one, and a Court of Equity would compel the trustee to make a conveyance.

2. To enable a *cestui que trust* to claim the jurisdiction of a Court of Equity in asserting a legal title, it must be distinctly and positively alleged that the trustee had refused the use of his name to the party beneficially interested in an action at law.

3. A Court of Equity will not entertain jurisdiction on the ground of preventing a multiplicity of suits, merely because the complainant has a multitude of suits to bring depending upon the same question or the same title; but will entertain such jurisdiction where the bill is in the nature of a bill of peace, as where the party is in possession, and is threatened with numerous actions, and in cases where a Court of Equity having entertained jurisdiction upon a clear ground of equity, as for a discovery, will also give relief, consequent upon discovery.

4. A Court of Equity will not entertain jurisdiction in cases of confusion of boundaries, upon the ground merely that the boundaries are in controversy, but

will require that there should be some equity superinduced by the act of the parties, such as fraud, gross negligence, or misconduct on the part of those whose duty it is to preserve and perpetuate such boundaries.

Appeal from a decree of the Circuit Court for Duval County.

The appellant, who was complainant in the Court below, filed her bill against Isaiah D. Hart and others, setting forth that on the thirteenth day of September, 1816, the Spanish Governor of East Florida granted to one Maria Taylor a certain tract of land, containing two hundred acres, situated on the River St. Johns, and particularly describing it by boundaries ; that said Hart, by divers conveyances, became possessed of this tract of land, or such parts as had not been previously conveyed. The bill further alleges that on the thirteenth day of December, 1816, the said Spanish Governor of East Florida granted to one ·John Masters a certain tract of land, situated on the river St. Johns, supposed to contain one hundred acres ; that this last mentioned tract was " bounded and described, " and a plat of the same duly returned and recorded, as · " follows : Bounded on the West by the aforesaid ' Maria " Taylor's' grant, on the North and East by Hogan's " Creek, and on the South by the river St. Johns, and con- " taining in reality about seventy-five acres ;" that said Hart, on the fourth day of May, 1836, by virtue of divers conveyances, and especially of a deed of conveyance from one John Bellamy, became seized and possessed of the tract known as the " Masters grant," or to such parts as had not previously been conveyed away by previous owners ; that said Hart, on the eighteenth day of December, 1836, for the consideration of $1,100.00, conveyed, with covenant of warranty, all his right, title and interest in and to the tract known as the " Masters grant" to William J. Mills, in trust, for the exclusive use and benefit of the

complainant, Maria Doggett, then the wife of John L. Doggett, free from all or any claims of said John L. Doggett, or any other person or persons claiming by, through or under him. The bill further sets forth that the consideration for the transfer from Hart to Mills, in trust as aforesaid, has been fully paid by complainant, ; that her husband, John L. Doggett, died before the institution of the suit, and that Mills, the trustee, neglected and refused to perform the trust reposed in him. The complainant claims that the " Masters Grant" was bounded on the West by the " Maria Taylor Grant," and alleges that Hart, since the execution of the deed of trust to Mills, claims that the said West boundary line of the " Masters Grant" is distant about forty rods from the East boundary of the " Maria Taylor Grant.", The bill alleges that the two grants referred to comprise the territory upon which the town of Jacksonville is now located, and sets forth certain conveyances from Hart to the other defendants, who were purchasers of lots within the disputed boundaries. It also asserts that Hart is and has been in possession of certain other lots within the disputed boundaries, some of which have been yielding rent for a series of years, for which it is claimed he should be held liable. The bill also alleges that certain other lots were conveyed by said Hart after the execution of said deed of trust by him, but before the same was recorded, so as to fix the purchasers with notice, and claims that Hart should be held liable therefor under the covenant of warranty contained in the deed of trust aforesaid. It concludes by praying that Hart should be decreed to deliver up the possession of the several lots still held or claimed by him, and that the boundary line between the Maria Taylor Grant and the Masters Grant may be established ; that Hart may be decreed to pay the amount, with interest, for which he is chargeable under his covenant of war-

28

218 SUPREME COURT,

Doggett vs. Hart and others.—Argument of Counsel.

ranty; that he may be decreed to render an account of the rents and profits which have come to his hands for and on account of any of the lots claimed to be within the Masters Grant, and pay the same to complainant; and that the other defendants may be decreed to deliver to complainant the several lots of which they are respectively in possession, as stated in the bill.

To this bill Hart for himself, and several of the other defendants jointly, demurred, alleging as causes of demurrer

1. That the complainant has not, by her bill, made such a case as entitles her to any relief against the defendants in a Court of Equity, but that the said complainant has a full, complete and adequate remedy in a Court of Law;

2. That the said bill is multifarious, in that the same is exhibited against the defendant, Hart, for divers separate and distinct matters and causes, and also against the defendants who demur, and divers other defendants, for divers separate and distinct matters and causes, in which they are in no wise jointly interested;

3. That by the said bill it appears that the said complainant hath not any legal or equitable interest in the subject matter of the said suit.

These demurrers were sustained by the Court below, and the bill was dismissed with costs. From this decree the complainant appealed.

*Philip Fraser*, (with whom was *Felix Livingston*,) for appellant.

*Of the jurisdiction.*—The third general division of the cognizance of equity arises from the establishment of principles, or the possession of powers, of a nature exclusively adapted to the subject matter, but wholly inadmissible at law.

Thus, trusts, equitable mortgages, and equities of redemption, the equity of a *feme covert* to a settlement, and to her separate estate, are confined to chancery, because these interests are creatures of that Court, owing their existence solely to its principles, and supported exclusively by its powers. Fonb. Eq., 23, note 3.

A trust is a creature of equity, and to be governed by their rules. Fonb. Eq., 227 and 307, note *; Story's Eq. Jur., § 29.

*Boundaries.*—The Court has never entertained bills for establishing boundaries, unless where the soil itself is in question, or where there might have been a multiplicity of suits. 4 Bridg. Eq. Dig., 133 ; Story's Eq. Jur., 616, 619, 620 and 621 ; Wake vs. Conyers, 1 Eden, 331 ; *ibid.*, 2 Cox, 360.

*Multifariousness.*—A single copyholder is not relievable in equity for an excessive fine, (that being determinable by a jury,) but to avoid multiplicity of suits, several copyholders may join to be relieved against a general fine, that is excessive. 4 Bridg. Eq. Dig., 89 & 90 ; 3 P. W., 157.

A demurrer for multifariousness will hold only where plaintiff claims several matters of different natures, but when a general right is claimed by the bill, though defendants have separate and distinct rights, a demurrer will not hold. 4 Bridg. Eq. Dig., Tit. Demurrer, 203 ; *ibid.*, § 71-2-4 ; Salvidge vs. Hyde, 5 Madd., 138 ; Exeter Coll. vs. Rowland, 6 Madd., 94 ; Kay vs. Moore, 1 Sim. & St. 61.

*Definition of multifariousness.*—1 Daniel Ch. Pr., 383, 384, 393, n. ; Story's Eq. Pl., 271.

Bills against persons with distinct interests in the same transaction, or arising under the same instrument, not multifarious. 1 Daniel Ch. Pr., 386, *et seq. ; ibid.*, 389, 392, 396.

*To ascertain boundaries.*—Turner vs. Robinson, 1 S. & S., 313.

*Impertinence no ground for Demurrer.*—1 Daniel Ch. Pr., 401.

*G. W. Call* for appellee, Hart, (with whom was *McQueen McIntosh*, for the other appellees.)

1. The bill would be multifarious if Hart were sole defendant, for it prays four distinct matters against him, each of which would be the proper matter of a separate suit.

Multifariousness consists in uniting in one bill several matters perfectly distinct and unconnected, against one defendant. Story's Eq. Pl., § 271, 280, 252-3.

It is not competent where A. is sole plaintiff, and B. sole defendant, to unite in one bill all sorts of matters in which they are mutually concerned. Attorney Genl. vs. Goldsmith's Co., 5 Simons, 670-5 ; 7 Cond. Eng. Ch. 573.

2. But the case is stronger here where there are many defendants. "What is more familiarly termed multifariousness as applied to a bill, is where a party is able to say he is brought as defendant to a record, with a large part of which and the case made by which he has nothing to do." 1 Daniel Ch. Pr., 385, cites 1 Mad., 89.

If the owner of the equitable title to land in a bill to compel a conveyance of the legal title to him, join the owner of the adjoining land as a defendant to settle a disputed boundary, the bill is multifarious. Hickman vs. Coke, 3 Humph., 640, cited in 2 U. S. Eq. Dig., 426.

This was originally done here, but the bill was, after allowance of the demurrer, so far amended as to strike out that prayer. It is a question whether that amendment can now be considered as made.

In Gaines and Wife vs. Chew, the Supreme Court held a bill multifarious which prayed an account from execu-

tors with which the other defendants had nothing to do. Gaines *et ux.* vs. Chew *et al.*, 2 How., 644.

In Whaley vs. Dawson, the Chancellor allowed a demurrer for multifariousness, to a bill praying for the partition of certain lands held in common, and for setting aside a lease granted to plaintiff. Whaley vs. Dawson, 2 Sch. & Lef., 371–2.

See also Salvidge vs. Hyde, Jacobs, 151; Harrison vs. Hogg, 2 Vesey, Jr., 323; Saxton vs. Davis, 18 Vesey, 71; Dunn vs. Dunn, 2 Simons, 329; Maud *et al.* vs. Ackholm, 2 Sim., 331; 2 White & Tud., part 1, page 318.

And in Boyd vs. Hoyt, after full argument, it was decided that where a joint claim against two defendants is improperly joined in the same bill with a separate claim against one of the defendants only, either or both may demur for multifariousness. Boyd vs. Hoyt, 5 Paige, 79.

II. But this is properly cognizable at law.

*Boundaries.*—Story on this subject, says: This jurisdiction is one which has been watched with a good deal of jealousy of late years, and there seems no inclination to favor it, unless special grounds are laid to sustain it. The general rule now adopted is not to entertain jurisdiction in cases of confusion of boundaries, upon the ground that the boundaries are in controversy, but to require that there should be some equity superinduced by the act of the parties. 1 Story's Eq. Jur., §615–619.

In the case of the Duke of Leeds vs. Earl of Strafford, the Court said, " the bill assumes that the plaintiff knows that these are copyhold lands, but does not know the boundaries, *it is the duty of the tenant to keep the boundaries, that is the foundation of the bill.*" Duke of Leeds vs. Earl of Strafford, 4 Vesey, 181.

In Gierson vs. Eyre, the Court said, " in all cases upon this head, the Court has gone upon this, that the defendant

222                   SUPREME COURT

Doggett vs. Hart and others.—Argument of Counsel.

or those under whom he claims, had a duty imposed upon him to keep the subjects distinct. But if there was no such duty, I do not know that any relief could be given." Gierson vs. Eyre, 9 Vesey, 345.

The same point was decided in Speer vs. Crawter, 17 Vesey, 216 ; Atty. General vs. Fullerton, 2 Ves. & Beames, 263 ; Loker vs. Rolle, 3 Vesey, 4–6 ; Metcalf vs. Beckwith, 2 P. Will., 376 ; St. Luke's vs. St. Leonard's, 1 Brown Ch. Rep., 40 ; Borwene vs. Prentice, 1 Brown Ch. Rep., 200.

2. It will be answered that this bill avoids a multiplicity of suits ; the same may be said of every multifarious bill, and the more multifarious, the greater multiplicity of suits is thereby avoided.

In the Mayor of York vs. Pilkington, *et al.*, the Court allowed a bill on the ground that it would avoid a multiplicity of suits. That case goes farther than any before or since, and has been made the subject of animadversion by other Chancellors, and in some of the cases cited, has been substantially overruled. Even in that case, the Chancellor said : " Now it is a rule that a man should not come into a Court of Equity to establish a legal right, unless he has established his title at law, if he can," and he cites two cases where parties in possession brought their bills to be quieted in possession, without first recovering at law, which bills were allowed, " otherwise," says the Chancellor, " if they had been interrupted and dispossessed, for then they had their remedy at law." Mayor of York vs. Pilkington, 1 Atk., 283.

3. But here no multiplicity of suits is to be apprehended ; there are but two titles, Hart's and Doggett's, one ejectment may be brought for the whole land in dispute.

Ejectment may be brought against several defendants claiming under different titles, who may defend under their

respective titles. White vs. Pickering, 12 S. & R., 435, cited in 2 U. S. Dig., 130, § 253.

Several defendants may be joined in one suit in ejectment, where the plaintiff's title in relation to all is the same, although their possession may be several and not joint. Each defendant may be found guilty separately, for the part of the premises in his possession, and the plaintiffs have judgment against them separately. Jackson vs. Andrews, 7 Wend., 152, cited in 2 U. S. Dig., 131, § 287.

Ejectment against several persons occupying different rooms in plaintiff's house is not misjoinder of defendants; each may plead severally as to the room which he occupies and disclaim as to the residue. Marshall vs. Wood, 5 Verm., 250, cited in 2 U. S. Dig., 131, § 288.

A plaintiff in an action of ejectment brought against eleven persons in possession of different portions of the premises claimed, holding by separate titles, though all derived from the same source, but without any community of interest, will be compelled on application of the defendants, to enter into a separate consent rule with each. Porter vs. Scoville, 5 Wend., 96, cited in 2 U. S. Dig., 132, § 331.

See also Adams on ejectment, 237, and notes.

4. The intervention of a trustee does not change the case.

In Motteux vs. London Assurance Co., Hardwick, Chancellor, said, "two reasons have been assigned by the plaintiff for coming into this Court, first, that the insurance is in the name of a trustee; if the trustee had refused the *cestui que trust* the use of his name in an action at law, there might have been some pretence, but upon this general ground of a trust, I should at this rate determine all policies without giving the company a chance of a trial." 1 Atk., 547.

See also Mitford Ch. Pl., 125.

In Hopkins vs. Ward, it was decreed that " a *cestui que trust* may, after the purposes of the deed have been satisfied, maintain ejectment in his own name, although the legal estate is in the trustee." · Hopkins vs. Ward, 6 Munf., 38, cited in 2 U. S. Dig., 129, § 234.

III. But there is no equity in this bill.

Upon its face, the bill shows one continuous exercise of jurisdiction by defendant Hart, over all the disputed lands, commencing on 26th July, 1826, and continuing to the present day, although on 4th May, 1836, Hart, for the first time, acquired title to the lands now owned by complainant.

The bill then shows that every successive owner of the Masters grant has acquiesced in the boundary as claimed by Hart. Complainant is now estopped from asserting it to be otherwise.

Where a person has stood by and saw a great and costly improvement made upon lands by persons claiming title and interposed no claim or pretensions of title for thirteen years, held that he was thereby estopped. · Higginbotham vs. Barnett, 5 John. Ch., 184 ; Stors vs. Buck, 6 John. C. R., 166.

Declarations made by a person in possession of real estate as to his interest or title to the same, may be given in evidence against those who have subsequently derived title from him. Padgett vs. Lawrence *et al.*, 10 Paige, 170.

ANDERSON, C. J. :

This is an appeal from the Circuit Court for Duval County, sitting in Chancery. The appellant filed in that Court her bill against the appellees, praying that the respondents might be decreed to deliver up to her the possession of certain real estate lying in the town of Jacksonville, and for other relief.

We propose to consider whether the complainant applied to the proper tribunal for the recovery of her alleged rights, and the conclusion to which we shall come upon this inquiry will render unnecessary the further examination of the imputed defects and errors in her bill.

"Has the complainant, then," to use the words of the demurrer which was filed by the respondents, " by her bill made such a case as entitles her to any relief against the defendants in a Court of Equity ?"

There are three several grounds on which the complainant rests her claim to come into a Court of Equity.

*First.* That she had no relief at law, in consequence of her interest in the lands in question, being only an equitable interest;

*Second.* That it was necessary to come into Equity, in order to avoid a multiplicity of suits ; and

*Third.* That she had a right to claim the aid of a Court of Equity on account of a confusion of boundaries, which confusion involved the title to the disputed lands.

We shall consider these grounds in the order here presented, with the facts connected with them as we find them in the record.

Mrs. Doggett's interest in the land is derived from a deed executed by I. D. Hart, one of the defendants. By this deed Hart conveyed certain lands, which it is not necessary to our present purpose to describe, to one William J. Mills, " in trust, for the exclusive use and benefit of Maria " Doggett, wife of John L. Doggett, free from all or any " claim or claims of said John L. Doggett, or any other per- " son or persons claiming in or through or by him, for the " sole use of the said Maria, free from all claims or de- " mands of the said John L. Doggett." The boundaries of the land conveyed in this deed are claimed to embrace the lands sued for. The bill shews that John L. Doggett died

in 1844, before the commencement of the present suit. It also charges that Mills, the Trustee, has neglected and abused his trust by confederating with Hart to deprive the complainant of a large portion of the land conveyed in the deed.

The bill alleges that Hart continues to hold much of this land, and has sold other portions and received payment for the same, and other of the defendants are in possession of portions of the land. From this statement, it appears that Mrs. Doggett's title is that of a *cestui que trust* under the deed from Hart, and it is obvious that she relies chiefly upon this as her warrant for coming into Equity to enforce her possessory rights. If in her character as developed by the statements of the bill, she could go into a Court of Law, and find there a full and adequate remedy for her alleged injuries, the door of an Equity Court would be closed to her. Let us enquire into her capacity to sue in a Court of Law.

The general rule doubtless is, that to enable a claimant to support an action of ejectment in a Court of Law, he must be clothed with the legal title to the lands, (Adams on Ejectment, 32,) but the necessity of having exceptions to these general rules, upon the principle of adaptation which is essential to their utility as instruments for administering justice, has prompted the Law Courts to relax this rule in regard to the class of persons to whom the complainant belongs. A *cestui que trust*, after the purposes of the deed have been satisfied, may maintain ejectment, upon a demise, in his own name, though the legal estate is still in the Trustee. Hopkins & Watson vs. Ward and others, 6 Munford's Reports, 38. Now in this case, the deed of trust was designed, and it is so expressed on its face, to give an absolute property to Mrs. Doggett, free from all claims or demands of her husband, John Dog-

gett. The husband having died several years since, the purposes of the deed in vesting the legal title in a Trustee, have been satisfied, and the *cestui* may therefore properly sue in ejectment.

In the case of the Town of North Hempstead vs. the Town of Hempstead, (2 Wend. Rep., 109, 134,) it was adjudged by the Court for the correction of Errors, that *cestuis que trust*, in the case of a resulting trust, may maintain or defend ejectment for the lands which constitute the trust property. Mrs. Doggett alleges in her bill that the consideration money in the trust deed was fully paid by herself; she is therefore entitled to all the benefits allowed in the case just cited to the *cestuis que trust* of a resulting trust, besides her peculiar privilege as a *cestui* of a satisfied trust.

These reasonable relaxations of the rule that a legal title can alone prevail in ejectment, seem to be founded upon a presumption in the excepted cases that there has been a conveyance of the legal estate. It is upon this ground that the Court in the case of Jackson *ex dem.* Smith et al. vs. Pierce, 2 J. R., 226, puts the allowance, and we find also that this is the ground upon which Adams in his Treatise on the action of Ejectment places it. "To obviate," he says, "the inconvenience, which may at times arise, when an ejectment is brought by a *cestui que trust*, from the operation of the salutary maxim that the legal estate must prevail, as affecting his situation with his Trustees, the jury will in particular cases be permitted to presume that a regular surrender has been made by the Trustees of their estate, thereby clothing the *cestui que trust* with the legal title, and enabling him to recover in the action. Thus a surrender will be presumed, if the purposes of the trust estate have been so satisfied; or if the beneficial occupation of the estate by the possessors induces a supposition

that a conveyance of the legal estate has been made to the party beneficially interested, in whom the trust is a plain one, and a Court of Equity will compel the Trustees to make a conveyance." Tillinghast Adams, 87.

Mrs. Doggett's case belongs to all three of the classes of cases here enumerated, as those in which the presumption of a legal title may be indulged. The trust has been satisfied, inasmuch as her husband, from whose claims and demands the trust was designed to protect the estate, is dead. She is in the beneficial occupation of at least a portion of the estate, for in the charge of confederacy against Hart and her Trustee, she charges that they had conspired to deprive her of the use and benefit of a large portion of the land conveyed in trust, and the trust is so plain a one that a Court of Equity would not hesitate to compel the Trustee to make her a conveyance, upon proof of her allegation as to the death of her husband.

Besides these general considerations, which indicate clearly that Mrs. Doggett would have been admitted into a Court of Law to try and establish the possessory rights claimed by her, it is further apparent upon the face of the bill that it is demurrable for her failure to allege that her Trustee had refused the use of his name in an action at law. This allegation is necessary even to set up a pretence for coming into Equity, to use the language of Lord Hardwick in the case of Motteux vs. the London Assurance Company, reported in 1 Atkins, 545.

But it is claimed, in the second place, that the complainant had a right to the aid of a Court of Chancery in order to avoid a multiplicity of suits. It is very clear that the jurisdiction of a Court of Equity cannot be invoked simply on the ground that the party seeking its interposition has a multitude of suits to bring, whether they be against defendants in suits of ejectment or in other actions,

If it were so, all the barriers between Courts of Law or Equity would be broken down in favor of the litigious, and the Equity Courts be overwhelmed with the consideration and adjudication of matters altogether foreign to their peculiar principles and rules of jurisprudence. A merchant in extensive business might bring in all his debtors to answer to a single monster bill, upon the same principle that a plaintiff in ejectment might bring his complaint into a Court of Equity, because there was more than a single trespasser upon the premises which he sought to recover.

In the case of Mayor of York vs. Pilkington and others, reported in 1 Atkins, 282, a precedent beyond which the Courts have never gone, there was a bill filed to quiet the plaintiff, who was in possession in a right of fishing against a number of defendants claiming several rights. This possession, or at least the establishment of the right of possession in an action at law, appears to be an indispensable pre-requisite to the interposition of a Court of Chancery. "The bills filed under these circumstances are bills of peace, and are designed to call upon the Equity Courts to extend their protection over parties who are in possession under the sanction of the Courts of law." In the case last referred to, Lord Hardwicke says: "It is a general rule that a man shall not come into a Court of Equity to establish a legal right until he has tried his title at Law, if he can."

So Lord Redesdale says, in Mitford's Equity Pl., 145-146, "In most cases, it is held, that the plaintiff ought to establish his right by a determination of a Court of Law in his favor before he files his bill in Equity, and if he has not so done, and the right he claims has not the sanction of long possession, and he has any means of trying the matter at Law, a demurrer will hold." The expressions

which qualify the expression here used by Lord Redesdale, that this doctrine *is held in most cases,* do not any of them embrace the case of Mrs. Doggett, and are in fact almost exclusively confined to cases of possession where the party has had no opportunity of trying his right at Law.

Mr. Justice Story, in his Commentaries upon Equity Jurisprudence, in enumerating the various subjects of Equity jurisdiction, no where sanctions the bringing of a suit in that Court upon the naked allegation that a bill there would avoid a multiplicity of suits in a Court of Law. Where a suitor seeks the aid of Chancery for the purposes of discovery, the Court will then, having possession of the case, proceed to adjust the relative rights of the parties in order to avoid a multiplicity of suits which might result from sending them back to a Court of Law. ·

So in cases of accounts, of agency, of apportionment, of general average, of contribution, of waste and of partnership, where Chancery once entertains a suit upon grounds legitimately cognizable in that Court, it will proceed to adjudicate other matters of which it has only incidental cognizance, in order to avoid multiplicity of suits. The cases we have enumerated embrace most of those which induce a Chancery Court to step out of its peculiar domain to intrude upon the province of a Law Court to prevent oppression and expensive litigation. In these, as well as in others which we have not enumerated, it will be found that this species of jurisdiction is consequential rather than original, and is exercised chiefly in regard to matters springing out of subjects belonging appropriately to its own jurisdiction. One of the earlier Chancellors (Lord Nottingham,) betrays by the language in which he claims the jurisdiction, that it may be traced in some degree to the ancient jealousy between the two Courts, as well as to the more becoming desire of suppressing useless litigation.

"When," said his Lordship, "this Court can determine the matter, it shall not be a handmaid to the other Courts, nor beget a suit to be ended elsewhere." 1 Story's Eq. Jur., § 65.

Mrs. Doggett's case does not belong to this class, for she is not before a Court of Chancery for any purpose belonging properly to its jurisdiction, so as to entitle her to an incidental inquiry into her rights of possession to the land she claims, nor for the reasons which we have already given, can her bill be considered in the nature of a bill of peace. She is therefore not entitled to the aid of a Court of Chancery upon this ground.

Third. We will inquire thirdly, whether she is entitled to its aid because one of the subjects of concurrent jurisdiction belonging to the Chancery Courts arises from the confusion of the boundaries of land. We will first examine the facts as set forth in the bill upon which this alleged confusion of boundaries rests.

The defendant, Hart, is alleged to be rightfully possessed of a grant of land on the St. John's river, known as the "Maria Taylor" grant, bounded and described as follows: "Beginning at a gum tree at the mouth of McCoy's Creek, and running thence north forty chains, to a pine tree, thence east fifty chains, to a pine tree, thence south forty chains, to an oak tree on the bank of the said St. John's river, and thence along the river westwardly to the place of beginning."

The deed of trust under which Mrs. Doggett claims, conveys to her trustee "a certain tract of land situated in Jacksonville, and bounded as follows: On the south, by St. John's River, on the north and east, by Hogan's Creek and on the west by lands granted to the heirs of Purnel Taylor, and now owned by I. D. Hart, which land described as above was formerly granted by the Spanish Gov-

232    SUPREME COURT,

Doggett vs. Hart and others.—Opinion of Court.

ornment to John Masters." The grant thus referred to, is described in the bill and exhibits, as bounded on the west by the aforesaid " Maria Taylor" grant, on the north and east by Hogan's Creek, and on the south by St. John's river.

It thus appears from the bill, that the two tracts abut upon each other, and that the controversy is as to the locality of the co-terminous boundary line. The bill alleges that Hart continued to hold possession of the disputed land after the execution of the trust deed by the connivance of the trustee.

It is to settle this boundary and to restore to complainant the possession of the land which she alleges to be wrongfully withheld from her, that she asks the aid of a Court of Equity.

Treating of the subject of boundaries, Mr. Justice Story, in his Commentaries, says, " whatever may have been the origin of this branch of jurisdiction, it is one which has been watched with a good deal of jealousy by Courts of Equity of late years ; and there seems to be no inclination to favor it, unless special grounds are laid to sustain it. The general rule now adopted, is not to entertain jurisdiction in cases of confusion of boundaries, upon the ground that the boundaries are in controversy, but to require that there should be some equity superinduced by the act of the parties, such as some particular circumstances of fraud, or some confusion where one has ploughed too near another, or some gross negligence, omission or misconduct on the part of persons whose special duty it is to preserve or perpetuate the boundaries." 1 Story's Com., § 615.

None of these equities belong to the case before us.

Again, " when there is an ordinary legal remedy," continues the Commentator, " there is certainly no ground for the interference of Courts of Equity, unless some peculiar

equity supervenes which a Court of Common Law cannot take notice of or protect.   § 616.

In this case we see no obstacle to the exercise of an ordinary legal remedy, nor do we recognize any peculiar equity which a Court of Common Law cannot protect.

Again, " the existence of a controverted boundary by no means constitutes a sufficient ground for the interposition of Courts of Equity. Between independent proprietors, such cases would be left to the proper redress at Law." § 619.

These principles are fully sustained by the case of Wake vs. Conyers ; indeed the language of the Commentator is the same with that of the Lord Keeper Henly who decided the case, 2 Wh. & Tud., 509.

In St. Lukes vs. St. Leonards, referred to in the same book, at page 512, a bill was filed by the Parish of St. Lukes to avoid confusion in making their rates, and prayed a Commissioner to fix their boundaries for that purpose. Lord Thurlow refused to interfere. In a note to this case, Lord Thurlow is reported to have said that if he should entertain a bill and direct an issue in such a case as this, he did not see what case would be peculiar to the Courts of Law. In the case of Spear vs. Crawter, 2 Mer., 417, Sir W. Grant, M. R., refused to issue a commission to ascertain the boundaries of manors, upon the authority of the two cases just referred to. Such has been the uniform ruling of the Courts, and as there is nothing in the case before us upon which an equity can be based, we must dismiss the complainant to look for her proper remedy in a Court of Law.

Having thus fully considered the right of the appellant to come into a Court of Equity at all, and decided adversely to the right, we find it unnecessary to discuss the matters of demurrer set forth by the defendants.

30

234 SUPREME COURT,

The decree of the Chancellor dismissing the bill must be affirmed.