## EDWARDS COUNTY

*v.*

## WHITE COUNTY.

1. COUNTY LINE—*act fixing, for Edwards county, construed.* The act of January 22, 1829, defining the southern boundary of the counties of Wayne and Edwards, provides that it shall begin at the S. W. cor. of sec. 18, T. 3 S., R. 5 E., and running thence east along the middle line of township 3 to the S. E. cor. of sec. 13, T. 3 S., R. 9 E., for the county of Wayne, and from thence east along said line to the Bon Pas creek, or to the Wabash river, as the case may be, for the county of Edwards. Owing to errors in the government surveys where this line reached another meridian, there was a jog in the lines of about ninety-five rods. It was *held,* that the line was not to be continued straight without reference to the jog, but was intended to run through the center of the several townships until it reached the creek or river, as the case might be.

2. SAME—*long acquiescence in, binding.* Where the public authorities, for a long series of years, have recognized a certain line as the boundary between their respective counties, public policy forbids that such line shall be changed, even though such line was not the one intended.

APPEAL from the Circuit Court of White county; the Hon. TAZEWELL B. TANNER, Judge, presiding.

Messrs. BELL & GREEN, for the appellant.

Messrs. CREBS & CONGER, and Mr. P. A. PEARCE, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

The county of Edwards exhibited its bill in equity, in the court below, against the county of White, to settle what is claimed to be a disputed boundary line between those counties. A demurrer was sustained to the bill, and the record is brought before us by the appeal of the county of Edwards.

The line claimed to be in dispute is that established by the act of January 22, 1829, defining the southern boundary line of the counties of Wayne and Edwards. So much of the act

as is pertinent to the question is as follows: "That the following shall be the southern boundary of the counties of Wayne and Edwards: Beginning at the S. W. corner of section 18, T. 3 S., of R. 5 E., and running thence east along the middle line of township 3, to the S. E. corner of section 13, T. 3 S., of R. 9 E., for the county of Wayne; and from thence east along said line to the *Bon Pas* creek, or to the Wabash river, as the case may be, for the county of Edwards."

These ranges are counted east from the third principal meridian, and the ranges continue to be thus counted until range fourteen west from the second principal meridian is met. In consequence of errors in the government surveys, the township lines east of the third principal meridian do not meet the township lines west of the second principal meridian, but the latter intersect the range line about ninety-five rods north of the points of intersection of the former, thus forming what is termed a "jog," in the townships.

The county of Edwards claims that its southern line should be extended from the point of its intersection with the range line between ranges 14 west and 11 east, in the same course or direction with that it bears through the preceding townships, until it strikes the *Bon Pas* creek, or Wabash river, as the case may be, without regard to the "jog" in the townships. In other words, that it is an unbroken or straight line in continuation of the line forming the southern boundary of Wayne county.

The county of White claims that the line is that of the middle of the tier of townships bearing the number "township three, south," and that, consequently, it is broken, or forms a "jog" with that line on the range line between ranges 11 east and 14 west.

The question is, what is the reasonable construction of the language of the act of January 22, 1829, above quoted? No fixed monument is designated on the *Bon Pas* creek, or the Wabash river, as the terminus of the line; and it is not provided that the line from the S. E. corner of section 13, T. 3 S., R. 9 E., shall be extended in the same direction as the pre-

ceding line, or that it shall be extended due east, or in accordance with any indicated variation of the needle. The direction, it is true, is to be east, but this is clearly only a general indication, and is not to be understood as meaning due east, because it is qualified by other words in the sentence. The language is, "and from thence east along said line," etc.; so, whether due east, or at any variation therefrom, or whether a straight or a broken line, depends entirely on "said line." "Said line" is assumed to be determined, and is, therefore, in the nature of a fixed monument, absolutely determining the boundary line. Its location not being ascertainable with reference to a prescribed course, but simply by a division of the several townships so as to leave one half thereof on the north and one half thereof on the south of it, since we must take judicial cognizance that the lines of townships three are broken so as to form a "jog" in the townships on the range line between T. 3 S., R. 11 E., and T. 3 S., R. 14 W., it follows that it must also be broken at the same place, and form a "jog" to the same extent, in the territory of which it marks the boundary. Or, stated in different language, there is nothing in the act that conclusively shows that the boundary line must be, throughout its extent, a straight line; but, instead, the boundary line of a given territory, namely, the south line of the north halves of the townships numbered 3, south, is adopted; and this, in range 14 west, as well as in ranges 5 to 11 east, inclusive, can, by no possibility, be elsewhere than through the center of the township, leaving an equal part to the north and to the south.

If the language of the statute were more ambiguous than we conceive it to be, it would still be competent, in solving the doubt, to consider the acts of the public authorities in recognition of the boundary line; and, upon principles of public policy, where, as here, courts, assessors and collectors of taxes, and other officers having duties, limited to the respective counties, to perform, have, for a long time, recognized and acted upon the assumption that a given line is the true boundary line between the counties, we shall not inquire whether, in the

first instance, the line was the one intended or not. The quiet and good order of communities ought not to be disturbed by controversy in regard to such questions, after, at least, the expiration of the period fixed for the limitation of actions between individuals where title to real estate is controverted; and this, not because in such a controversy counties are necessarily within the contemplation of the Statute of Limitations, but because the public welfare forbids that the possibility of strife and controversy in regard to boundary lines between counties should continue indefinitely. The principle is recognized in *Hamilton* v. *McNiel*, 13 Grattan, 389, and *Hooker* v. *Sterling*, 36 Pa. St. 423.

White county has been in the undisturbed possession of the territory in dispute, for almost half a century, and, we think, in any view of the meaning of the act of January 22, 1829, it would be wholly unjustifiable in a court of law or equity to now question her right or authority.

The decree is affirmed.

*Decree affirmed.*