[No. 1415.]

HUMBOLDT COUNTY, PLAINTIFF AND RESPONDENT, *v.* LANDER COUNTY, DEFENDANT AND APPELLANT.

1—EQUITY—JURISDICTION OF DISPUTED COUNTY BOUNDARIES.—The mere existence of a disputed boundary between counties is insufficient to give a court of equity jurisdiction of the question. In addition there must be some equitable circumstance shown arising from the conduct, situation, or relation of the parties, such as that the boundary has become confused through the fraud of the defendant, or that the duty of preserving it rests upon the defendant, or that it will avoid a multiplicity of suits. The fact that the defendant county is claiming jurisdiction over a part of plaintiff's territory, is collecting taxes therein, and claims the right so to do, is insufficient for this purpose.

2—DECREE, NOT BINDING ON OTHERS NOT PARTIES.—A decree ren-dered in this action as to the situation of the boundary, would not determine that question as to any one not a party to the action.

APPEAL from judgment by default after demurrer to amended complaint overruled, from District Court, Washoe county; *A. E. Cheney*, District Judge.

The facts are sufficiently stated in the opinion.

*W. D. Jones,* District Attorney of Lander county, *D. S. Truman* and *J. F. Dennis,* for Appellant:

The court overruled the demurrer and the defendant, not desiring to make further answer, allowed judgment to be taken against it.

Appellant contends that a court of equity has no jurisdiction of this action as set forth in the complaint, but that said action should have been brought in a court of law, as there is a plain, speedy and adequate remedy at law.

In rendering the decision of the lower court, Judge Cheney files an elaborate opinion in the case, citing but one authority of the defendant (appellant) in the case, ignoring all others.

The question is not an open one in this state, as this honorable court has already taken a different view and enunciated the law to be that there is a plain, speedy and adequate remedy, especially in *Eureka Co.* v. *Lander Co.,* 21 Nev. 144, which is on all fours with the case at bar.

Such being the law of this state, there is no reason to cite additional authority, but it seems that the same view has been taken elsewhere. (*Kittell* v. *Jensen,* 56 N. W. 487.)

The trial court seeks to take this case out of the general rule by reason of some supposed and surmised equities of his own, not pleaded in the complaint, nor relied upon by counsel.

It can make no difference that this is a question of importance, nor that it is a question which affects the people, nor is a question of public character and concerns every elector and taxpayer in each county. It can make no difference that the state owes it to the citizen that such question should be speedily settled and definitely determined, nor can it make any difference if public policy dictates that the taxpayer, delinquent or criminal, should not be enabled to take advantage of or escape punishment by reason of such dispute. None of these facts even tend to the solution of the question at issue, *viz.,* the jurisdiction of a court of equity in this case when there is an adequate remedy at law. Judge Cheney has cited none of the above instances in which a court of law has not full jurisdiction.

Can adequate relief be obtained in a court of law? If it can, then equity, generally, has no jurisdiction. It is nonsensical to say that the judgment of the court of law is not

as binding as that of a court of equity. Then the only question here is: Can a court of law determine where a boundary line is situated so as to make the matter *res adjudicata?* This is fully answered by 21 Nev. 144, where it was done.

The only claimed grievance of Humboldt county in its complaint is the unlawful levying and collection of taxes, claimed to belong to it, by the appellant here. The same claim was made in 21 Nev. 144; no other is made here, no other was made there. The question on which that case wholly depended was where the true boundary line was situated; the question was fully raised, considered by the court and determined in the action at law.

The bill of plaintiff in this case fails to show any equity, or facts sufficient to give a court of equity jurisdiction. (*Doggett* v. *Hart,* 5 Fla. 215; 4 Randolph (Va.) 74; 1 Storey's Eq. Jurisp. 619; 6 Am. & Eng. Ency. of Law, p. 693; 21 Nev. 144; 30 Pac. Rep. 160; 31 Pac. Rep. 655, 657; 23 Me. 448; 2 Anst. 395; 1 Brown's C. C. 40; 2 Anst. 386; 2 DeG. Mc. & G. 111; 5 Hump. 79; 7 Hump. 569; 2 Vern. 38; 3 Ves. 4; 2 P. Wms. 376; 3 P. Wms. 148; 67 Pa. St. 507; 4 Or. 177; 1 Jac. & Walk. 491; 1 Eden, 331; 2 Lead. Cases in Eq. 433; 5 Leigh. 191; 36 Cal. 249.)

Of these cases three are directly in point here, *viz.:* 21 Nev. 144; 2 Anst. 86, and *Waring* v. *Hotham.*

There could be no dispute, except a fictitious one, as to where the boundary line between Lander and Humboldt is or was, because the same was fully settled and determined in 21 Nev. 144. Courts will not entertain fictitious disputes and determine them, if known. (21 Nev. 127 and authorities cited.)

" No court should lend its aid to such a proceeding, *least of all a court of equity.*" (38 Mo. App. 243.)

For the foregoing reasons and the fact that respondent's bill sets forth no special equity to take the case out of the general rule, the lower court erred when it held that as a court of equity it had jurisdiction in this case.

Where must the facts appear showing that there is a special equity existing? Not in the opinion of the court in rendering a decision on a demurrer, certainly, but in the complaint or bill.

There can be no dispute as to where the boundary line is

when the legislature has, by law, fixed and established and determined it. It is then determined by the highest power in the state.

A county is only a political subdivision of the state, or sovereign, in which rests the entire power to create the county or to change its boundaries. In the sovereign also rests the power to say when it can be sued, if sued at all, and also to say if it, or any part of it, shall be subject to the law of limitations. If the state has passed laws to this effect they are binding on the state as a whole or on any lesser part of the whole, such as a county, as on the individual, and actions by a state or county can only be prosecuted or defended in obedience to such limitation laws. (*State* v. *Y. J. S. M. Co.*, 14 Nev. 220.)

Then the only question here which it seems necessary to discuss is: "What length of acquiescence in the usurpation of the right is sufficient to constitute a defense to an action brought to assert, or claim the right so usurped or acquiesced in?" The authorities are now uniform, universal and harmonious that such acquiescence for a period equal to the statute of limitations is sufficient to bar the right, and constitute a defense to such an action. Here we were prevented from relying upon this defense, and in so preventing us from so doing the lower court erred. The reasons given by Judge Cheney for preventing us have not been deemed good or sufficient by the judges of the highest court in our land. That such was the true rule was not denied by counsel in 21 Nev. 144, the contention there being "that the statute of limitations did not apply because the action had been brought in ninety days after the receipt and appropriation." As it would be impossible to give a more thorough citation of authorities on the point than was done by Mr. Mayenbaum in that case, and having obtained his consent, we use his brief as follows: 2 Hermann Est., pp. 1266, 1274; 1 Dill. Mun. Corp., sec. 184n; 6 Wend. 468; 16 N. Y. 357; 19 N. Y. 279; 35 N. Y. 113, 116; 25 Cal. 619; 48 Cal. 395; 59 Cal. 113; 75 Cal. 610; 76 Cal. 359; 85 Ill. 390, 401; 11 Peters, 185; 4 How. U. S. 591; 7 How. U. S. 660; 8 Fost. N. H. 111; 6 Fost. N. H. 473; 2 Hump. 19; 7 Cuch. 382; 18 Nev. 44; 13 La. 69; 13 Gratt. 389; 35 Ill. 562; 6 Saw. 332; *Roane Co.* v. *Anderson Co.*, 14 S. W. Rep. 1079.

That the county of Lander is exercising a power that is conferred by law cannot be questioned. It is not questioned here. The contention here is that it is exercising such power within or over a section of country that it was originally not granted the right to so exercise the power, and to which and in which we claim it has acquired a right to exercise the same by lapse of time, acquiescence, or the statute of limitation of this state.

*M. S. Bonnifield*, for Respondent:

Did the lower court have jurisdiction in the premises to render its judgment declaring which of the two alleged lines between the counties is the true boundary line? In the first volume of Pomeroy's Equity Jurisprudence, p. 155, is given some subject matters of which courts of equity have jurisdiction, such as establishing wills, construing wills, and determining the rights under them of devisees and legatees, and establishing disputed boundaries. The same author on page 162 names "the particular cases of disputed boundaries," and on page 167 he gives " the partition of lands, the assignment of dower and the settlement of disputed boundaries," as coming within the concurrent jurisdiction. In the case of *Lyon County* v. *Washoe County*, 8 Nev. 177, the identical question decided in the case at bar was decided. The question of disputed boundary was the only question involved. On the authority of that case the complaint here was drawn to determine the question of the true boundary between the plaintiff and defendant.

We respectfully submit to the court the following portion of the opinion of Judge Cheney: " To counties through their officers is intrusted the performance of many of the most important public duties and trusts. Their power to levy and collect taxes; inquire into and present indictments for the commission of crimes; the jurisdiction of their courts; the enforcement of civil and criminal process; the place and persons for whom the elective franchise shall be exercised; the care and maintenance of public roads and bridges; the management of public schools and apportionment of school funds, all depend upon and are confined within the boundaries of the county."

" To those residing within this disputed territory these are

questions of the highest importance; questions not only affecting them, but which are of such public character that they concern every elector and taxpayer in each county. The state owes it to the citizen that such question should be speedily and definitely settled; and public policy dictates that the taxpayer, delinquent or criminal, should not be enabled to take advantage of or to escape punishment by reason of such disputes."

"A court of law is unable in one action to grant adequate relief, and prevent the repeated assertion by the losing party of all its powers within the contested territory, to the manifest annoyance of those residing therein, to the injury of the other county, and to the creation and promulgation of diverse and multiplied suits directly affecting a large number of persons."

"A court of equity, with its power to enjoin either party from the further assertion of jurisdiction over disputed ground, is alone able to enter and enforce in one action a decree which will finally and effectually terminate the contention and bring about an end to the litigation, which it is the policy of the law to secure."

" The answer of the defendant pleads title to the territory between the disputed lines by prescription and adverse possession. It is unnecessary to consider the vexed question whether counties come within the operation of the statute of limitations like individuals in respect to ordinary obligations and liabilities, for the reason that counties, in respect to their rights to exercise jurisdiction over this territory, occupy a position entirely dissimilar to that of individuals. It is not and cannot be claimed that either plaintiff or defendant is the owner of the property embraced within this territory, nor that they, or either of them, have ever had the open or exclusive possession of it; nor that they have claimed title as against the true owner."

" The question between the counties is not and never has been, who is the true owner of this land, but simply who has the legal right to exercise certain governmental functions over the inhabitants and property therein."

"That being the extent of the asserted right, that must necessarily be the limit of any right acquired by adverse possession. Adverse possession of real estate is a means of

destroying the title of the owner, and creating in the adverse possessor a title superior to that of the true owner, and the statutes of limitations in reference to adverse possession operate on the title and not merely to the remedy. (Am. & Eng., pp. 693, 694; *Campbell* v. *Holt*, 115 U. S. 622, 623.) By adverse possession for the statutory period the possessor becomes vested with a perfect title, which cannot be taken away by the legislature. (*Sharp* v. *Blankenship*, 59 Cal. 288.) To constitute a title by prescription there must be a thing claimed which may be granted, and a person to whom a grant may be made, and who may be a party to such grant. (Washburn on Easements, 32 ed., p. 118.)"

"Title by prescription applies only to such rights as an individual or corporation may grant or take under a grant. (19 Am. & Eng. Ency., p. 24.)"

"A county is a subdivision of a state created by the sovereign will without the particular solicitation, consent or concurrent action of the people who inhabit it. It is denominated a public corporation, for the reason that it is a part of the machinery employed in carrying on the affairs of state. * * * Being of itself unable to bring itself into legal existence, or to enlarge the boundaries of its jurisdiction or scope of its functions, it cannot dispose of them by grant, barter or sale; and, being without power to deprive itself of the authority and duty of exercising its governmental functions by any positive, overt act of its officers or agents *a fortiori* it cannot do so by their laches, omissions or negligences. (Cooley Const., 4th ed., 296; 4 Am. & Eng. Ency. 343, 345; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307; *Tucker* v. *Va. City*, 4 Nev. 20; *State* v. *Swift*, 11 Nev. 128; 12 Am. & Eng. Ency. 562, 563, note 3; *In Re County of Hampshire*, 143 Mass. 424; 13 Am. & Eng. Ency. 714.)

"No more is here decided than that the public governmental jurisdiction of a county over any portion of the territory of a state cannot be lost or acquired by adverse possession or prescription, and that in an action between two counties to establish a disputed boundary a plea of title by adverse possession, or by prescription, constitutes no defense. * * * If it is once conceded that the right of a county to exercise any of its political or civil authority within the limit established by sovereignty acting through the legisla-

ture can be lost or acquired by adverse possession, laches or prescriptive use, the will of the legislature ceases to be supreme and is subordinate to the intention of neglect or agreement of inferior municipal officers.   *   *   *   The mere statement of some of the legitimate consequences of such a rule shows that it is utterly at variance with the purposes and duties for which counties are created, and places the agent of the public beyond the control of its sovereign will—raises the created above its creator.   Such cannot be law."

*D. S. Truman, W. D. Jones,* District Attorney of Lander county, and *J. F. Dennis,* for Appellant, in reply:

There is but one authority cited by counsel for respondent that requires comment or answer, and that is *Lyon Co.* v. *Washoe Co.,* 8 Nev. 177.   That case, as reported, is no authority here, because it in no manner undertakes to determine the question made in the case at bar.   The only question in that case determined by this court was on the motion to dismiss the appeal, because the copy of the notice was served before the notice of appeal was filed with the clerk of the district court.   It is true that that was an action to obtain a decree declaring certain territory to be within the boundaries of Lyon county and not in Washoe county.   We think that the question of jurisdiction was never raised in that case at all.   It is sufficient answer here to the question of jurisdiction that the plaintiff's bill shows on its face that there is no dispute as to the boundary line at all.   And there is a plain, speedy and adequate remedy at law, and where there is equity will not in a case of this kind entertain jurisdiction.   (Pomeroy's Eq. Jurisp., 3d vol.; 42 Pa. St. 488; 13 Ill. 201; 3 Ves. 4; 2 P. Wms. 376; 3 P. Wms. 148.)

In every bill for the purpose here claimed it is necessary to clearly show that without the assistance of the court of equity the boundaries cannot be found.   (*Miller* v. *Warmington,* 1 Jac. & Walk. 491.)

Judge Cheney, in the case at bar, seems to rest his opinion on the ground of a prevention of a multiplicity of suits, if we understand the same correctly, but his position is fully answered by the court in *Stuart's Heirs* v. *Coalter,* 4 Rand. (Va.) 74.   And we do not see what can be, or need be, added

thereto to show that in this case a court of equity has no
jurisdiction.

By the Court, MURPHY, C. J.:

Action in equity to establish the boundary line between
plaintiff and defendant. The complaint sets out, by refer-
ence to fixed points and monuments, what the plaintiff
claims to be the true line, as established by the joint action
of the two counties, and as afterwards recognized and fixed
by the legislature; that subsequently, under the act of March
2, 1887 (Stats. 1887, p. 97), directing the surveyor-general to
make a survey of the railroads in this state, and to place
monuments at the points where any railroad crosses a county
line, that officer placed a monument at a point on the Cen-
tral Pacific railroad two and seven-twentieths miles west of
where the true boundary crossed that road, and that thereby
a contention has arisen between said counties as to where
the true line is, and that each claims jurisdiction over the
territory lying between those two points and extending the
entire length of the boundary between them; that the defend-
ant claims jurisdiction over the tract, and during the years
1892 and 1893 has assessed the property situated therein for
the purpose of taxing the same, has collected the taxes
thereon, and claims the right so to do.

The defendant demurred, upon the grounds that the court
had no jurisdiction, and for want of facts sufficient to con-
stitute a cause of action. The demurrer was overruled, and
a decree entered fixing the boundary in accordance with
the allegations of the complaint. The correctness of the
ruling upon the demurrer is the only point necessary to be
noticed to dispose of this appeal.

In many of the states the legislatures have provided spe-
cially for ascertaining and fixing the boundaries of counties
where they are in controversy. They have sometimes con-
ferred jurisdiction in such cases upon the courts, but that
has not been done in this state. We have several statutes
bearing upon the matter (Gen. Stats., sec. 1854; Stats. 1862,
p. 93; Stats. 1866, p. 130), but none of them give any power
to the courts to settle the controversy. In the absence of. a
statute to that effect, we have been cited to no precedent sus-
taining such an action upon the part of one political organi-

zation against another, and, after a somewhat diligent search, we have been able to find none, except that of *Edwards Co.* v. *White Co.*, 85 Ill. 390, where the point does not seem to have been raised or considered. *Lyon Co.* v. *Washoe Co.*, 8 Nev. 177, was dismissed in this court for want of proper service of the notice of appeal, and an examination of the record shows that the question of jurisdiction was not raised nor passed upon even by the lower court. Under these circumstances, we have been compelled to resort to the principles established in such actions between private owners, feeling that they are at least analogous, and that, if the action could not be maintained between individuals, no sufficient reason has been suggested why it should be between counties.

In cases where boundaries have become lost, confused, obliterated, or obscure, courts of equity, by granting commissions to ascertain the lost boundary, have exercised jurisdiction from very early times. Its origin is uncertain. It is sometimes supposed to have been derived from two ancient writs, long since abolished (3 Pom. Eq. Jur., sec. 1384); at others, it is claimed as coming under the head of accident (Tyler, Bound. 266); and, again, that consent is the ground upon which it was first exercised (*Speer* v. *Crawter*, 2 Mer. 410, 417).

Whatever it may have been, it is certain that at the present day the mere existence of a disputed boundary, even though lost or confused, is insufficient to give a court of equity jurisdiction. In addition, there must be some equitable circumstance shown, which has arisen from the conduct, situation, or relations of the parties; such as that the boundary has become confused ˙through the fraud of the defendant, or that the duty of preserving it rests upon him, or that it will avoid a multiplicity of suits. In *Speer* v. *Crawter, supra*, Sir William Grant, M. R., stated the law as follows: "But on what principle can a court of equity interfere between two independent proprietors, and force one of them to have his rights tried and determined in any other than the ordinary legal mode in which questions of property are to be decided? In some cases, certainly, the court has granted commissions or directed issues on no other apparent ground than that the boundaries of manors were in controversy. In *Wake* v. *Conyers*, 2 Cox, 360, however,

Lord Northington held that it was in the case of manors that the exercise of the jurisdiction, which, he says, 'had been assumed of late,' was peculiarly objectionable. He refused either to grant a commission or to direct an issue. So did Lord Thurlow in the case of two parishes (*St. Luke's* v. *St. Leonard's*, 2 Anstr. 386, 395.) In the same case of *Wake* v. *Conyers*, Lord Northington says that, in his apprehension, this court has simply no jurisdiction to settle the boundaries even of land, unless some equity is superinduced by act of parties. I concur in that opinion, and think that the circumstance of a confusion of boundaries furnishes *per se* no ground for the interposition of the court."

The authorities to the same effect are numerous and practically unanimous. See *Love* v. *Morrill*, 19 Or. 546, and authorities therein cited; *King* v. *Brigham*, 23 Or. 262, and authorities therein cited; *Ashurst* v. *McKenzie*, 9 South. 262; *Wilson* v. *Hart*, 98 Mo. 618; *Doggett* v. *Hart*, 5 Fla. 232; *Bressler* v. *Pitts*, 58 Mich. 348; *Wetherbee* v. *Dunn*, 36 Cal. 251; *Norris' Appeal*, 64 Pa. St. 279; *Tillmes* v. *Marsh*, 67 Pa. St. 510.

It must be taken as settled that a court of equity does not have jurisdiction of a question of boundary simply because it is in dispute; and passing by the proposition that the complaint here shows no lost or confused boundary, but, on the contrary, that the boundary is well defined and marked, we pass to a consideration of the question whether any other fact is shown that brings it within the rule. We think there is not. In addition to the fact of a dispute, the complaint simply alleges that the defendant is claiming jurisdiction over the disputed tract, is collecting taxes upon the property situated therein, and claims the right to continue so to do. All this does not confer equity jurisdiction. It certainly would not even if the county owned the property illegally taxed (Cooley, Taxn. 760); and much less should it do so where the most that can be said is that the defendant is illegally collecting money for taxes from some of the taxpayers in the plaintiff county. It is not shown that Humboldt county has not been paid all the taxes upon that property due to it, nor that it ever has lost, or ever will lose, a dollar by defendant's wrongful action, although we do not mean to intimate by that that the court would have jurisdiction were that fact shown.

It is argued, however, that a court of equity should have jurisdiction because the settlement of the boundary is of great importance to both counties and to all living or owning property in the disputed tract; that it is highly important that it should be known to which county it belongs, because the right to prosecute crime, to serve process therein, the exercise of the elective franchise, and many other rights for and against people and property therein, all depend upon that fact. All this may be freely admitted, but, aside from the fact that none of them are grounds of equitable jurisdiction, it is, perhaps, one of the greatest objections to this action, as it seems to us, that it settles none of these questions. We know of no principle upon which it can be claimed that the decree entered in this action determines the situation of the boundary as against any one not a party. It would not even be admissible for or against either party to a criminal proceeding, to an action to recover delinquent taxes, or in an election contest; nor would it prevent the assessor of Lander county from assessing property therein. The law fixes the boundary. All that a court could possibly do would be to determine the fact of where it is so fixed, and as upon this would often depend very important rights of others, of which they could not be deprived without their day in court, judgment upon the point can conclude no one not a party to the action.

It is unnecessary to determine how far, if at all, manors and parishes in England are public corporations, so as to make the decisions there concerning their lost or confused boundaries in point in this action; but they are, at least, somewhat analogous, and as will be seen from the citation from *Speer* v. *Crawter*, *supra*, it is in such cases that the exercise of jurisdiction by a court of equity is pronounced particularly pernicious.

After a careful consideration of the points presented on this appeal, we are satisfied that the court erred in overruling the defendant's demurrer. It is therefore ordered that the judgment of the district court be reversed, and the demurrer to the complaint sustained.