J. B. NORMAN, JR., P. L. WEEKS, J. S. WEEKS AND J. S. WEEKS, JR., CO-PARTNERS DOING BUSINESS AS NORMAN, WEEKS & COMPANY, *Plaintiffs in Error,* v. VIOLA P. BEEKMAN, JOINED BY HER HUSBAND, JOHN C. BEEKMAN, *Defendants in Error.*

1. Pleas on equitable grounds to an action in ejectment praying that the interest of a *feme covert* plaintiff be charged in equity with an agreement in writing respecting the lands, ineffective to convey the legal title, are properly stricken.

2. A certified copy of a deed of conveyance executed in 1885 by a Florida corporation, under its corporate seal, signed by its president and acknowledged by him before a proper officer is admissible, even though attested by but one witness.

3. A tax deed executed in 1904 by the clerk under a private scroll is invalid, and the placing of the official seal to the certificate of recordation endorsed upon the instrument is not an attaching of the official seal to its execution.

4. Proof that the lands in controversy are the separate property of the married woman is not a variance in an action of ejectment by "V. B., joined by her husband J. B.," even though the declaration concludes that the "plaintiffs claim title."

5. Where the defendants in ejectment fail to object to the introduction of deeds that may be incomplete by reason of exceptions not definitely located, fail to connect themselves with any title, paper or possessory, or suggest a better title elsewhere, the affirmative charge for them may be refused.

6. In the statutory action in ejectment, the plaintiff may recover the land in controversy together with mesne profits, which latter include damages for waste and dilapidation.

7. In ejectment, the damages allowed are those in actions of trespass *vi et armis*, not trover and conversion.

8. In ejectment the injury is to the freehold and the true measure of damages is the injury done to that freehold, whether by withholding the profits thereof from the freeholder or the waste and dilapidation committed thereon.

9. In determining in ejectment the amount of damages for cutting and removing wood the jury are not limited to the value of that actually cut and removed; they may and should also consider the effect which the cutting has had upon the place wasted. In ascertaining this, it is competent to show the difference in value of the lands before and after the commission of the waste and incidentally the market value of the turpentine taken.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Pasco County.

The facts in the case are stated in the opinion of the court.

*Glen & Himes,* and *J. A. Hendley,* for Plaintiff in Error;

*Macfarlane & Davis, Geo. W. Dayton* and *K. I. McKay,* for Defendant in Error.

COCKRELL, J.—This is an action in ejectment brought by Viola P. Beekman, joined by her husband, for the recovery of certain lands lying in Pasco county together with mesne profits and damages for strip and waste by reason of turpentining the trees. Pleas of not guilty and

not in possession were interposed, as also pleas upon equitable grounds and a special plea setting up the nature of the possession; demurrers and motions to strike these latter pleas were interposed and sustained, and separate errors are assigned upon the striking of the pleas on equitable grounds.

The first of these pleas avers in short that the lands in controversy are the separate statutory property of the plaintiff Mrs. Beekman; that in August, 1901, she entered into an agreement in writing with one Flanagan for the benefit of her said property whereby she undertook to sell him the timber on the land, the consideration being Flanagan's agreement to redeem the lands from tax sales and to deliver the tax receipts and certificates then held; that the defendants acquired their rights through the said Flanagan and are exercising the rights of turpentining thereunder, and they pray that the lands "be charged in equity with the said agreement, or the uses, rents and profits thereof sequestered to the end that the said agreement may be properly charged in equity against said premises. The writing was neither sealed, witnessed nor acknowledged and it is admitted the legal title did not pass. The relief sought by this plea is strictly affirmative, not merely a setting forth of equitable grounds why the plaintiff should not recover possession, and if admitted would go rather to the measure of damages than to the right of action. Smith v. Love, 49 Fla. 230, 38 South. Rep. 376; Pensacola Lumber Co. v. S.-I. Co., 50 Fla. 244.

The other plea on equitable grounds was properly stricken for the same reason.

At the trial the plaintiffs put in evidence as a link in their chain of title a certified copy of deed executed in 1885 by a Florida corporation, under its corporate seal, signed by its president, in the presence of one witness, the acknowledgment being made by the president before

a proper officer. Objection was made to its introduction upon the ground that it was not executed in the presence of two witnesses and the question is now fairly before us for decision.

In Margarum v. J. S. Christie Orange Co., 37 Fla. 165, 19 South. Rep. 637, a doubt was entertained as to the necessity for witnesses in deeds of conveyance by a corporation organized under the Act of 1868, and in International Kaolin Co., v. Vause, 55 Fla. 641, 46 South. Rep. 3, we said *passim* "it would seem that the deeds of corporations are not required to be witnessed by subscribing witnesses, but that our statute recognizes the doctrine universally obtaining that corporations in such matters speak and act through their corporate seal."

The thirteenth section of Chapter 1639, Laws of 1868, the General Corporation Act reads: "It shall be lawful for any corporation to convey lands by deed sealed with the common seal of said corporation, and signed by the president, or presiding member, or trustee of said corporation, and such deed when so executed shall be recorded by the recorder in the county Clerk's office of the county where the land lies in like manner with other deeds and no further proof shall be deemed necessary to commit the same to record." At the time and for fifty years prior to the passage of this act, the statutes avoided deeds of conveyance, not having two subscribing witnesses, and also provided for acknowledgment by the "party or parties" before designated officers or proof by a subscribing witness, and we can read the act of 1868 only as dispensing with the necessity for witnesses and acknowledgment. The legislature may well have concluded there was less danger of forgery of corporation's seal than of an individual's signature and so dispensed with the necessity of witnesses. In construing a very similar act in East Coast Lumber Co., v. Ellis-Young Co., 55 Fla. 256, text

258, 45 South. Rep. 826, we held that witnesses were not essential to the validity of a deed executed by the Trustees of the Internal Improvement Fund.

The question mooted in the Margarum case, *supra,* recurs, what effect did the subsequent act of 1873, Chapter 1939, bearing the title "An Act providing for the Acknowledgment of Deeds and other Conveyances of Lands" have upon Chapter 1639? The restrictive feature of the title was pointed out by this court in 1882, and a section of the act, not here involved, was declared not embraced therein. Carr v. Thomas, 18 Fla. 736. There has moreover been a legislative interpretation of the effect of the later act, as appears by the first revision of our laws. In the Revised Statutes of 1892 we find part of section 30 of Chapter 1639 re-enacted and transferred to the title of alienation by deed, being section 1955 of that Revision, which reads: "Any corporation may convey lands by deed, sealed with its common seal and signed in its name by the president or chief executive officer of the corporation;" but the provision in the original act as to record without acknowledgment has been eliminated. The Revisers, with legislative approval, evidently construed the act of 1873 as covering only the acknowledgment of the deed for record and not interfering with the previous special provision or to the manner of executing a deed of conveyance by a corporation. There may too be some significance in the change of the words "party or parties" used in the original act of 1828 to the word "persons" used in the first section of the act of 1873, and further in the fact that in the legislative revision this first section declaring how deeds shall be executed is entirely ignored and resort is had solely to the act of 1828.

We are clear that Chapter 1939, providing for the acknowledgment of deeds generally which has no repealing clause, should not by implication be held to repeal the

special charter law of corporations, authorizing them to convey lands by deed, sealed with the common seal and signed by the prescribed officer.

· It is suggested by counsel that the attestation of the deed is no part of its execution, citing 13 Cyc. 557, and that the act of 1868 refers only to execution. The statement in that publication is based upon cases decided in Minnesota and Oregon holding that the legal title, as between the parties passes though the deed be not witnessed. In other States however, the statute of frauds, required only the signature of the grantor, and the provision for witnesses is found in the recording acts. While with us the same section making signing, sealing and delivery prerequisite to the passing of the legal title makes the attestation of two subscribing witnesses equally and like a prerequisite and we can see no reason for separating two acts in point of dignity or importance, nor impute to the legislature knowledge of the existence of one and ignorance of the other, in so important, widely known and time-tried legislation.

The court did not err in overruling the objection.

We think, however, the court did err in admitting a tax deed, introduced as a supplemental or auxiliary source of title. The deed is executed by "H. H. Henley, Clerk, Ct. Ct. Pasco County, Florida," and sealed only by the word seal written within parentheses; no official seal being attached to the execution of the instrument, while on the back of the instrument and far removed from this signature his official seal is attached to the statement that the instrument was by him recorded. The instrument was signed in January, 1904, and the testimonium clause in the skeleton form for tax deed set forth in Chapter 5113, Laws of 1903, concludes "have executed this deed and have hereunto set my official signature ·and seal at ............... in the county of .............. State of

Florida, on this ...... day of .............. A. D. 19..
(Seal.)   Clerk of Circuit Court, .............. County,
Florida," omitting attestation.   It is contended the act
calls for the official signature, but not the official seal.
This construction is at best but a narrow one and seems
to be conclusively settled by the general law then and for
many years theretofore on the statute books, now Gen-
eral Statutes, § 590, providing that all tax deeds "shall
be signed by the Clerk of the Circuit Court, shall be wit-
nessed as other deeds, and the seal of the Circuit Clerk
attached thereto, and shall be acknowledged or proven as
other deeds;" the seal to be attached as part and parcel
of the execution of the deed, not indiscriminately nor to
an accidental and incidental statement upon a deed that
some subsequent act has been done by an officer, an act
affecting neither the execution nor acknowledgment.

At the close of the testimony the defendants requested
the affirmative charge, upon the idea that the plaintiffs
had not proved title.   Two theories are urged as support-
ing the right to this charge.

It is insisted that the title, if proven, was in the wife
alone and not jointly in the husband and wife.   We find
no variance here.   The action is prosecuted by "Viola P.
Beekman, joined by her husband, John C. Beekman," thus
clearly indicating that the lands are claimed as the sepa-
rate property of the wife, and that the husband joins
therein merely to assume the responsibility for the costs
of the litigation and to subject to adjudication whatever
of right under the laws of Florida, may be cast upon the
husband as such, and the statement of the declaration
that "the said plaintiffs claim title" is controlled by the
character in which they bring the action.   No defendant
could possibly be misled by this language, and it is the
ordinary and usual manner in Florida of bringing actions
in ejectment for the wife's separate estate.   The statute,

authorizing married women to sue in their own names is permissive only,. not mandatory, and does not destroy the former practice of joining the husband, should he so desire.

It is further urged the defendants were entitled to the affirmative charge because of certain exceptions, not definitely located in a deed from James F. Keeney to Charles P. Keeney, the former husband of the plaintiff and from Cora M. Keeney to the same Viola. The defendants had failed to introduce any evidence to connect themselves with the Keeney or any title, paper or possessory, nor do they appear to have offered any objection to these deeds as being incomplete, nor was suggestion made that a better title might be elsewhere. Under these conditions we think a prima facie case had been made out and the peremptory instruction for the defendants was properly refused.

It may be that if properly brought to the attention of the court and jury, the admissions of the defendants in their verified pleas filed in this case would act as an estoppel and the plaintiffs would not be forced to go back of the title there referred to, but of this we express no fixed opinion.

There is serious difficulty upon the measure of damages allowed. The case was submitted upon the theory that the defendants were wilful trespassers and to be penalized to the highest value of the turpentine that might have been produced from the trees during their occupancy.

It is first urged that the statutory inhibition against joining replevin and ejectment with each other or with other causes of action. General Statutes, section 1389, forbids the recovery in ejectment for the trespass upon the land. The applicability of the statute, however, will be governed by what the statutory action of ejectment includes within itself. Under General Statutes, section

1968, the plaintiff in ejectment recovers "the land in controversy, together with mesne profits," but it is insisted that under the statute rental value only can be recovered. In Ashmead v. Wilson, 22 Fla. 255, this court undertook to settle the practice, noting the apparent discrepancy between the allowance of mesne profits by the words of the statute while the form of the declaration prescribed therein looked rather to a claim for use and occupation, but it was declared that the object of the statute was to do away with the necessity of bringing two separate actions and to provide for a final settlement, both as to the land and damages for the detention thereof, in one action; and further that in an action for mesne profits damages for waste and dilapidation could be recovered. While it may be true that this declaration may not have been essential to the decision of that particular case, yet it has stood unreversed and unquestionable, so far as our opinions show, for more than twenty years as the deliberate view of the court upon the comprehensiveness of the action of ejectment. It is in line with modern tendencies towards simplification of the practice; so far as we can see no one can justly complain of the settlement of the whole controversy in the one action and the practice there declared is again adopted as the proper construction of the statute. In the declaration before us the plaintiff specifically asked for damages for waste and dilapidation, putting the defendants directly on notice and the pleading is not here questioned.

In the Ashmead case, however, the damages to be allowed are those in actions of trespass *vi et armis,* not trover and conversion and it was error to submit the cause to the jury to find damages as in trover. The case relied on by the defendants in error, Wright v. Skinner, 34 Fla. 453, 16 South. Rep. 335, as also its basic predecessor, Wooden-Ware Co. v. United States, 106 U. S. 432,

1 Sup. Ct. Rep. 398, were in trover and the rule of damages is industriously confined to that class of actions. Here the injury is to the freehold and the true measure of damages is the injury done to that freehold, whether by withholding the profits thereof from the freeholder or the waste and dilapidation committed thereon. We adopt the rule found in 4 Southerland Damages 1034 "In general, this damage (for waste) is the amount the estate is diminished thereby in value. In determining the amount of damages for cutting and removing wood the jury are not limited to the value of that actually cut and removed; they may and should also consider the effect which the cutting has had upon the place wasted. The damages are equal to the solid and permanent injury to the inheritance." To ascertain what that injury may be, it is competent to show the difference in value of the lands before and after the commission of the waste, and incidentally the market value of turpentine at the time and place may enter into that calculation. Improper management may have produced a low return from turpentine gathered and the true owner should not be charged with this mismanagement. The lands here involved were apparently wild lands with little or no rental value and practically the sole basis for damages is the depreciation in their value caused by the turpentine operations. There was no evidence of good faith on defendant's part, nor do they claim any diminution of the damages on that ground.

What we have said will probably prevent error on another trial and further discussion of the assignments of error is not deemed necessary.

The judgment is reversed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and PARK-
HILL, JJ., concur.

HOCKER, J., absent, concurred in the opinion as pre-
pared.