BLANCHE PEPPLE, *Appellant,* v. W. J. ROGERS, W. J.
HOWEY COMPANY and ORANGE BELT SECURITIES COM-
PANY, *Appellees.*

140 So. 205.

En Banc.

Opinion filed March 16, 1932.

*Lambdin & Ramseur,* for Appellant;

*McMullen, McMullen & Pogue* and *Duncan, Hamlin & Duncan,* for Appellees.

BROWN, J.—The appellant as complainant in the court below filed a bill of complaint in the Circuit Court in and for Pinellas County against W. J. Rogers, a resident of Lake County, Florida, and W. J. Howey Company, and Orange Belt Securities Company, both being Florida corporations, each having an office and place of business in Lake County, Florida, and it being alleged that the Howey Company also had an office and place of business in St. Petersburg, Pinellas County, Florida. The purpose of the bill was to enjoin said W. J. Rogers from prosecuting an action at law which he had brought in the Circuit Court of Pinellas County to enforce against the complain-

ant the collection of a certain note for $6300.00, and to secure the rescission and cancellation of said note thus sued on, and also of a certain contract between the complainant and the W. J. Howey Company entered into at the time said note was executed, as a part of the same transaction, and to restrain said W. J. Howey Company from prosecuting any action at law or in equity upon said contract or on said promissory note. Unless the prayer for the cancellation of the "articles of agreement" can be construed to refer to those executed with both companies, which is not at all clear, it does not appear that the bill prayed for any specific relief against the Orange Belt Securities Company, that company not being named in the prayer of the bill.

The bill alleged that on December 16, 1930, the complainant, a resident of Michigan, temporarily residing in St. Petersburg, Florida, was requested by the sales manager of the W. J. Howey Company in St. Petersburg to go to Howey-in-the-Hills along with a number of other tourists in one of the "palatial" motor buses operated by said Company. That she did so and that on her arrival at Howey-in-the-Hills, an agent and officer of the Howey Company showed her and induced her to take what he said was an option on five and a quarter acres of land on which was located a small grove of one year old citrus fruit trees, at the price of $1200.00 per acre, but which, it is alleged, was not worth exceeding $300.00 per acre; that at said agent's solicitation and assurance that she was creating no legal liability whatsoever on her part, and never having had any experience with legal papers and relying on the representation of said agent she signed certain papers that were presented to her; that no papers or receipts were delivered to her at the time and she was given no opportunity to examine the same, the entire

transaction being rushed through under high pressure and with the utmost rapidity; that two years prior to that time the complainant had suffered a complete nervous breakdown, since which time she had been in declining health and incapacitated to transact business and unable to direct or manage her business affairs, being constantly under the care of physicians and taking treatment for her nervous and mental condition. That the first indication complainant had as to the nature of the transaction was on December 31, 1930, when she received a letter from the W. J. Howey Company enclosing what purported to be an agreement signed by complainant and accepted by said Company, and a few days later a similar communication from the Orange Belt Securities Company enclosing a duplicate of an agreement purporting to have been signed by her, copies of which agreements were attached as exhibits. The agreement with W. J. Howey Company is a contract of purchase of the land in question at the price of $6300.00, to be paid by a note due two weeks after date; the other contract, purporting to be an agreement signed by the Orange Belt Securities Company and the complainant, is a long contract, by which the Orange Belt Company was to cultivate and care for the citrus trees for $30.00 per acre per year for the first four years and $37.00 per acre annually for eight years thereafter, and contained many provisions with reference to the cultivation and fertilization of the land and the gathering and marketing of the crops after the trees came into bearing. That up to the time when she received these communications complainant had no knowledge or memory that she had signed a promissory note for any amount and that on December 31st, previous to the receipt of the foregoing letters and documents, she had written the W. J. Howey Company a letter advising them that she could not raise a sufficient sum of money to exercise the option agreement which she

understood she had signed and did not care to go forward with the same. The Howey Company acknowledged the receipt of her letter, and complainant, to her astonishment and consternation discovered that she had in some way signed a note for $6300.00, due December 31, 1930, which the Howey Company claimed to have sold to W. J. Rogers of Tavares, Florida, and that she then wrote the Howey Company that she had no knowledge of having signed any note and believed that she had merely received an option to purchase the property at the price of $6300.00 as she had been assured by one of the Company officials. That thereupon the Howey Company, through its Secretary wrote complainant advising her that the Company did not consent to a rescission or cancellation of the purported agreement, that it had sold her note to said W. J. Rogers, who was in a position to collect the same. That complainant has since discovered that a gross fraud had been perpetrated upon her and that through the trickery of the representative of the Howey Company she had signed a note payable to the order of herself, (and presumably endorsed by her), for the sum of $6300.00, which the defendant claims to have sold to said W. J. Rogers; that on January 15, 1931, said Rogers had filed suit against the complainant on said note in the Circuit Court of Pinellas County, and that said suit was then pending against her. That the said W. J. Rogers was only an aide for the W. J. Howey Company and was not the legal and bona fide owner of said note but acquired the same with full notice and knowledge of the fraud and misrepresentation of his co-defendant in obtaining said instrument; that he had not paid anything of value for said note, which bore no endorsement or guarantee upon the part of the Howey Company, and that there was a collusive arrangement existing between Rogers and the Howey Company whereby Rogers held the note as the purported assignee of the

Howey Company in secret trust for the use and benefit of said Company and that any amount recovered by him against the complainant would be paid over to his co-defendant which, knowing that he could not collect the note in his own name, had engineered a fraudulent assignment to Rogers in an attempt to collect the same in his name. That complainant did not receive any consideration for said note; that she had never had any experience with business affairs, her life having been devoted to the duties of a country school teacher; that she had been induced to sign such said paper writings by the fraudulent representation of the agent for the Howey Company, and was not given an opportunity to read the same. That said W. J. Howey Company is threatening to sue complainant on the articles of agreement; that complainant's remedy at law is incomplete and she is entitled to have such action at law enjoined and the articles of agreement cancelled and rescinded, together with said promissory note, and that she has no adequate remedy save in a court of equity; that complainant offers to do any act which the court finds that in equity and good conscience she ought to do concerning the matters alleged in her bill. The bill was filed on March 2, 1931,. and on motion of complainant a temporary injunction was granted.

Joint and several pleas of privilege were filed by W. J. Howey Company and the Orange Belt Securities Company, setting up among other things that both of said companies were Florida corporations and had their principal places of business in Howey-in-the-Hills, Lake County, Florida, and that they nor either of them had at any time maintained a place of business or any agency whatsoever in the County of Pinellas; and that said contracts and note were all executed by the complainant in Lake County, Florida. The court, after taking testimony

under said pleas of privilege, made an order granting the same.

Defendant, Rogers, filed a demurrer to the bill, which was sustained by the court on June 12, 1931. On June the 11th, the Circuit Judge granted the complainant leave to file an amendment to the bill of complaint, endorsing the order on the proposed amendment, which amendment was not actually filed, according to the transcript, until July 10, 1931, which was 22 days after the entry of appeal from the order sustaining the demurrer. However, we do not regard this amendment, even if we could consider it, as being necessarily material to the complainant's case.

From the order of the court granting the pleas of privilege filed by the two corporate defendants, and from the order sustaining the demurrer of the defendant Rogers to the complainant's bill, appeals were taken.

We will first consider the action of the court in sustaining the demurrer to the bill. While the question thus presented is not without difficulty, we are of the opinion that the bill was not without equity and that the court was in error in sustaining the demurrer.

The general rule is that in order for a misrepresentation to be a ground for rescission and cancellation, it must be with reference to some material fact or thing, unknown to the complainant, either from his not having examined, or for want of opportunity to be informed, or from his entire confidence reposed in the defendant, and such confidence should be a right growing out of relations of a fiduciary character existing between the parties. The courts will not ordinarily protect those who, with full opportunity to do so, will not protect themselves. Glass v. Craig, 83 Fla. 408, 91 So. 332; George E. Sebring Co. v. Skinner, 129 So. 759, 100 Fla. 315; Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408. And these cases also hold that a mere expression of opinion by the vendor as to the

value of the property sold, even though incorrect, is not ground for rescission. ''But'', as was said by this court in Willis v. Fowler, 136 So. 358, ''it has been held that when one of the parties to a contract of sale is in possession of exclusive or greatly superior knowledge of the subject matter, as where an officer of a corporation, with full knowledge, makes a statement to a prospective purchaser of its stock, a mere member of the general public, as to what the stock is worth, his statement will be regarded as the statement of a matter of fact, rather than of opinion, and if false and fraudulent, the sale may be rescinded.'' See also Holgate v. Jones, 94 Fla. 198, 113 So. 714, and Peacock Hotel Inc. v. Shipman, 138 So. 44. There is another qualification of this general rule which gives this bill equity, to the effect that those who, because of weakness of mind, are incapable of protecting themselves from fraud and imposition, should have the protection of the law. While mere weakness of mind alone, without imposition of fraud, forms no ground for vacating a contract, yet if there is any unfairness in the transaction, such as gross inadequacy of consideration, the mental incapacity or imbecility of the party may be taken into consideration for the purpose of showing such fraud as will afford a ground for annulling it. This rule is sometimes applied to contracts made with intoxicated persons. It has also been held that if the opposite party has induced one by a trickery, fraud, or any kind of artifice, not to read the contract, with the view of obtaining from him a paper which he could not otherwise have obtained, the right to prove these circumstances and thereby establish the fact that he was signing an entirely different paper, may be shown for the purpose of relieving such party from the obligation thus fraudulently obtained. But while it is the desire of the courts to repress fraud upon the one hand, and yet not to encourage negligence and inattention

on the other, the authorities are practically unanimous in holding that a person who, having the competency and the opportunity to read a contract, and who sustains no confidential relation to the other party, cannot avoid the contract on the grounds of mistake if he signs it without reading it, at least in the absence of special circumstances excusing his failure to read it. It is generally the duty of every party to learn and know the contents of a contract before he signs and delivers it. 6 R. C. L., 624-634.

Appellees, however, contend that the complainant had an adequate remedy at law, inasmuch as the matters set up in her bill could have been set up as defenses to the action at law on the note, and the Chancellor, as shown by his order, reached this conclusion. It is true that equity will not enjoin legal proceedings where the law court is competent to adjudicate upon proper pleas the matters presented to the court of equity as a ground for injunction. Garrett v. Phillips, 134 So. 231; Cohen v. State Bank, 29 Fla. 579, 11 So. 47. It is also true that under our statutes equitable pleas may be interposed in actions at law; but only negative defenses can be thus interposed, and no affirmative relief can be thus obtained. Smith v. Love, 49 Fla. 230, 238, 38 So. 376, 379; Norman v. Beekman, 58 Fla. 325, 50 So. 876; Hobbs v. Chamberlain, 55 Fla. 661, 45 So. 988; Commodores Point Company v. Hudnall, 283 Fed. 164. While it is well settled that injunction will not be granted where the remedy at law is full and adequate and complete, it is just as well settled that equity has jurisdiction to enjoin an action at law, at the suit of defendant in such action, where equity has ability to afford full relief and grant a more complete remedy than the court of law can extend. The jurisdiction to enjoin actions at law is to be sparingly exercised and only when other remedies are inadequate and the equities invoking it are apparent and strong. 32 C. J.

84, 86. Thus, when the bringing in of new parties is necessary in order to complete justice, and this cannot be done at law, equity will assume jurisdiction of the case and enjoin the proceedings at law. Or, when a party is attempting through the instrumentality of an action at law, to obtain an unconscionable advantage of another, equity will restrain such action. Lewis & Spelling on Injunctions, Sections 72-74. 32 C. J. 86. And where complainant shows himself to be entitled to some purely equitable remedy, thus giving equity jurisdiction of the case, an injunction will be granted to restrain pending or threatened actions at law concerning the same subject matter. When equity has once obtained jurisdiction for one purpose, it will generally dispose of the entire case, bringing in all necessary parties and enjoining actions at law in order to prevent circuity of action and a multiplicity of suits and thus to render complete justice between the parties. 32 C. J. 88, 90, 93, 95, 101; Curtis v. Albritton, 132 So. 677.

It was held by this Court in Nixon v. Temple Terrace Estates, 121 So. 475, 97 Fla. 392, that where the execution of certain purchase money notes and mortgages had been procured by fraudulent representations of the vendor-mortgagee, the vendee could go into equity for the purpose of securing the cancellation of such notes and mortgages, the recovery of the money paid, and for injunction against the negotiation of said instruments. The 15th and 16th headnotes in the case of Willis v. Fowler, 136 So. 358, read as follows:

15. "There is in a certain sense a concurrent jurisdiction of law and equity in cases of contracts procured by fraud, affording the injured party an election of remedies. Yet, if the remedy which the law affords is adequate to the case, equity may not interfere to enforce the rescission of a contract. But if the injury caused by allowing the contract to stand would be irreparable, or if no proceeding at law would

afford full and adequate relief, or if complete justice can be done only by rescinding a fraudulent transaction and restoring the parties to their former position in such effectual fashion as only equity can accomplish, then the jurisdiction of equity is clear and undoubted, and the injured party may resort thereto, although he has some remedy, though an inadequate one, at law, which he could have pursued had he elected to do so."

16. "While a court of law may award damages for the deceit or fraud by which a party was induced to enter into a contract, or may in proper cases entertain an action for money had and received to recover the consideration thus fraudulently obtained, it cannot rescind a contract or cancel a written instrument."

See also Hargis v. Campbell, 13 Fla. 27; Pepper v. Beville, 100 Fla. 97, 129 So. 334.

While the facts alleged in the bill in this case could have been pleaded in defense to the law action, the fact remains, that such pleas, either legal or equitable, to the law action, would not have given complainant as complete and adequate a remedy as was sought by the bill, which sought the annulment of the entire transaction, the cancellation not only of the note sued on at law, but also of the contract or contracts executed contemporaneously with the notes, upon the ground that the execution of all said instruments had been obtained by fraud. Even if upon proof of the facts alleged in the bill, the complainant could have defended the action at law, the law court could not have required the surrender and cancellation of the note or the contract, or have restrained the negotiation thereof, or the threatened action of the Howcy Company against the complainant on its contract. We think it is therefore clear that the remedy at law would not have been adequate or complete, and that the bill made out a prima facie case for the injunction prayed.

We reach the conclusion therefore that the court erred

in sustaining the demurrer of the defendant Rogers to the complainant's bill. We come now to a consideration of the ruling of the court in granting the pleas of privilege filed by the two corporate defendants.

Under our statutes, all provisions of law governing locality of actions at law, shall, when they can be made applicable, govern those in chancery. Sec. 4889 C. G. L. While we have some special statutory provisions regulating the issuance of writs of injunction to restrain proceedings at law (See Sec. 4968 C. G. L.), we have no statute expressly dealing with the venue of this particular class of suits, as is the case in many of the States. Thus under some statutes, it is specially provided that such suits may be brought in the county in which the proceedings sought to be enjoined are pending, although no defendant against whom substantial relief is prayed resides there. 32 C. J. 292. In this case the plaintiff in the action at law, W. J. Rogers, was a resident and citizen of Lake County, but he came into the Circuit Court of Pinellas County and filed an action of law in that court against the complainant in the instant case, thus submitting himself for the purpose of that action, to the jurisdiction of the Circuit Court of Pinellas County, in which county the complainant was temporarily residing. If the facts alleged in the bill are true, Rogers had no right to recover on that note, and by bringing an action at law for that purpose, in the county of the defendant's residence, such defendant being the complainant here, he gave to the complainant a cause of action in equity for the injunction of said action at law, and the cancellation of the note. Sec. 4219 C. G. L. provides that suits shall be begun only in the county where the defendant resides, or where the cause of action accrued, or where the property in litigation is. Section 4220 provides that suits against two or more defendants residing in different counties may be brought in any county in

which any defendant resides. Section 4221 says, that suits upon several causes of action may be brought in any county where either of the causes of action arose. Section 4222 provides that suits against domestic corporations shall be commenced in the county where such corporation shall have or usually keep an office for the transaction of its customary business, or where the cause of action accrued or where the property in litigation is.

Now, it appears that the cause of action, so far as the defendant Rogers was concerned, accrued in the county of Pinellas, where he brought his action of law against the complainant, and we think it is clear that she had the right so far as the question of venue is concerned to bring this action in equity to enjoin the action at law in Pinellas County where such law action had been begun and was pending.

We are also of the opinion that the complainant had a right to make the W. J. Howey Company a party defendant, and that its pleas of privilege should have been disallowed, by reason of the provisions of both Sections 4221 and 4222 of C. G. L., because, upon the facts alleged in the bill, said W. J. Rogers was acting for the benefit of the W. J. Howey Company in bringing his action at law, and that the money recovered in such action, if any, would be paid over by Rogers to the Howey Company. Furthermore, the contract held by the Howey Company and the note sued on form a part of the same transaction, and the court of equity, having assumed jurisdiction of the cause on an equitable ground, has the power to reach out and draw into its consideration and determination the entire subject matter, bringing before it all the parties interested therein, regardless of the county in which they may reside. Gentry-Futch Co. v. Gentry, 90 Fla. 595; 10 R. C. L. 370; 21 C. J. 134-148. It also appears from the allegations of the bill that the same agent who secured the execution

of the note which Rogers brought suit on, at the same time secured the execution of the contract between complainant and the Howey Company, and that the note formed the consideration of that contract. The two documents form parts of the same transaction, and in order to avoid a multiplicity of suits and to settle the entire controversy between the parties, the complainant had the right to make the Howey Company a party defendant and to seek in the one suit the cancellation of the note held by Rogers and the contract held by the Howey Company. Furthermore, Section 4221, C. G. L. as above pointed out, specifically provides that suits upon several causes of action may be brought in any county where either of the causes of action arose.

However, we doubt if the same holds true as to the defendant Orange Belt Securities Company. So far as the pleadings show, either in the bill or elsewhere, the Orange Belt Securities Company was not a party to nor directly interested in either the note sued on by Rogers or the contract held by the Howey Company, nor was there any connection or community of interests alleged between the two corporations, except the fact that the same agent, by the same method, secured the contemporaneous execution by the complainant of both contracts, the one with the Howey Company and the one with the Orange Belt Company, and one contract related to the purchase and the other to the cultivation of the same land. But, as we have seen, the bill does not clearly pray for any specific relief against the Orange Belt Company, although it does pray for such relief against the other two defendants, naming them. While the bill prays the cancellation of the note and the "articles of agreement", and it may have been the intention of the pleader that this prayer should cover the articles of agreement executed by and with both corporations, the fact remains that the other two defendants are

named in the prayer for relief whereas the Orange Belt Securities Company is not named. Therefore a decree in accordance with the prayer of the bill would not have necessarily affected the interests of the Orange Belt Securities Company. In this state of the record we are inclined to hold that, if there was any error in granting the plea of privilege interposed by the Orange Belt Company, which is not decided, it was error without injury.

The record presented does not render it necessary for us to decide the question as to whether the Orange Belt Company was a proper party to the suit. We might observe, however, that under the general rule, all persons whose interests will necessarily be affected by the decree, or without whose presence a complete settlement of the questions involved in the action could not be attained, should be named as defendants. So also, persons without whose joinder no effectual decree could be rendered in plaintiff's favor are necessary parties, since the court ought not to interfere at all except in a mode which would be effectual for the purpose of the decree. But it is not necessary to join as defendants persons whose presence is not essential to a complete settlement of the questions involved in the suit and whose rights will not be affected by the decree. 32 C. J. 296-297. However, it has been held that where fraud is the gravamen of complainant's right to relief, all persons who participated in the alleged fraud, and those who will be beneficiaries of it, are proper parties. 32 C. J. 300. See also in this connection Lewis & Spelling on Injunctions, section 77 et seq.

For errors above pointed out the orders of the court appealed from must be reversed and the cause remanded.

Reversed and remanded.

WHITFIELD, ELLIS, TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., dissents.