ST. LUCIE ESTATES, INC., a Florida Corporation, and FLORIDA GROWERS, INC., a Florida Corporation, *Appellants*, vs. O. NOBLES, as Receiver of the Stuart Bank & Trust Company, a Florida Banking Corporation, *Appellee.*

141 So. 314.

Division A.

Opinion filed May 5, 1932.

Petition for rehearing denied May 24, 1932.

422

*T. T. Oughterson* and *D. C. Smith*, for Appellants;
*Smith & Kanner*, for Appellee.

BUFORD, C.J.—Appellants were complainants in the court below and instituted suit by bill in equity, the purpose of which was to enjoin the sale of certain promissory notes, bonds and mortgages, and for a decree rescinding and cancelling a certain promissory note to secure the payment of which the other promissory notes, bonds and mortgages appeared to be held as collateral.

The bill alleges in effect that the principal note was made and executed by the maker thereof by reason of a mistake on its part as to existing facts and because the payee thereof had represented to the maker thereof that the maker thereof was indebted to the payee on a former obligation in an amount equal to the face of the note and that the maker, believing such representation to be true, made and executed the note when in truth and in fact no such indebtedness existed and that the payee of the said note had theretofore full payment of settlement in accord and satisfaction of all obligations due from the maker to the payee of the note; and it is further alleged that the other notes, bonds and mortgages claimed to be held by the payee of the principal note as collateral to secure the payment thereof were procured by fraud and deception and were never delivered by the maker of the note to the payee of the note as collateral to secure the payment of the note..

It was alleged that Nobles as Receiver of Stuart Bank & Trust Company was about to offer for sale and sell the principal note and also the notes, bonds and mortgages claimed to be held by the payee of the principal note and its successors as collateral to secure the payment thereof

and that he would sell the same unless enjoined by order of Court.

A demurrer was interposed and sustained to the bill of complaint. The bill of complaint was amended but in immaterial matters and thereafter demurrer was filed to the amended bill. The demurrer was upon two grounds: first, that the amended bill contains no equity; and second, it appears from said amended bill that the complainants had full, adequate and complete remedy at law.

This demurrer was sustained and the complainants appealed.

The order sustaining the demurrer was error, there being equity in the bill. The allegations of the bill show that unless the sale is enjoined and the principal note cancelled, such sale will follow and the several instruments described will pass into other hands and it is apparent from such allegations that the result would be that the complainant would be required to defend numerous suits and it is also apparent that unless the sale of the notes, bonds and mortgages claimed to be held by the Receiver as security is enjoined, the complainant may ultimately lose its alleged property rights in those notes, bonds and mortgages so claimed to be held.

It is well settled that equity will interpose its jurisdiction to correct fraud or mistake and to that end will compel rescission and cancellation of contracts and instruments creating obligations which have been procured by fraud or mistake. See International Realty Associates, Inc. vs. McAdoo, 87. Fla. 1, 99 Sou. 117, and cases there cited. In that case this Court said:

"The power of a court of equity to enforce the cancellation of a contract though well recognized in character and application, is very exceptional. Its purpose is to supplement the powers of the courts of law when there exists unusual equity of a settled and well recognized kind. In compelling rescission

equity will not interfere with the freedom of contract or substitute itself for legal remedies even though bad and improvident bargains have been entered into. The grounds on which equity interferes for cancellation or rescission are distinctly marked and every case proper for this branch of its jurisdiction is reducible to a particular head.

These grounds are, primarily, fraud, mistake, turpitude of consideration and circumstances entitling to relief on the principle of *quia timet;* and generally they do not include inadequacy of price, improvidence, surprise, or mere hardship. Promises, honestly made, which the promisor cannot fulfill, do not furnish sufficient grounds for vacating a contract based thereon; but mutual mistake, or false representations as to material facts which constitute an inducement to the contract and upon which the party had a right to rely, will give equity jurisdiction.''

Mr. Pomeroy, in his work on Equity Juris Prudence and Equitable Remedies, Vol. 4, Sec. 1377, says:

''The jurisdiction of equity to grant the remedy of cancellation exists and will always be exercised when it is necessary to protect or maintain equitable primary estates, interests or rights; where, however, the estate, interest, or right is legal, the jurisdiction always *exists,* but its *exercise* depends upon the adequacy of the legal remedies,—a party being left to his affirmative or defensive remedy at law, where full and complete justice can thereby be done. The occasions giving rise to the exercise of this jurisdiction are mistake, fraud and other instances where enforcing instruments or agreements would be inequitable or unjust. A doubt was formerly entertained as to whether a court of equity ought to exercise its jurisdiction to order instruments absolutely void at law, and not merely voidable, to be delivered up and cancelled, since the legal remedy of a party was adequate and complete, and no case was presented for equitable interference; but it is now well settled that jurisdiction will be exercised in such cases, except where the invalidity of the instrument is apparent

on its face. The particular instances in which this remedy is most often given are instruments concerning land, and negotiable paper before maturity, the legal remedies in these cases being, as a general rule, inadequate. The remedy is also frequently given in case of bonds, policies of insurance, settlements and compromises, awards, and judgments.''

The same author in Vol. 5, Sec. 2106, says:

''Where a writing purports to embody an agreement which in fact was never made because there was no 'meeting of the minds,' no offer and acceptance of the same thing, cancellation of the instrument is an appropriate remedy; indeed, it is merely an extension of the principle of reformation to the case where the antecedent contract had no existence at all. Cancellation or rescission is more common in instances where there is a formal assent, but a mistake, shared by both parties to the contract, as to some fundamental matter forming the inducement to the contract. Thus both parties may be mistaken as to the very existence or identity of the subject-matter of the contract; in such cases rescission is freely granted.''

The allegations of the bill in this case meet squarely the rule last above stated in that it is alleged that there was mistake as to the very existence of the subject-matter of the contract, the subject-matter of the contract being an alleged pre-existing debt due from the maker to the payee of the principal note.

If the principal note was based upon mistake of both parties or the mistake of the maker as to the existence of a debt due from the maker to the payee, then the note was not enforceable as between the maker and the payee, or as between the maker and the assignee of the payee after maturity, and as the note carried with it the assignment of the other notes, bonds and mortgages as collateral security for its payment, the assignment was void and of no force and effect and equity may be invoked to rescind and cancel the same.

It appears to us that there is equity in the original and in the amended bill of complaint and that the allegations of both the original and the amended bill show that the complainants did not have, and do not have, an adequate remedy at law. See Pepple vs. Rogers, 105 Fla. 462, 140 Sou. 205.

For the reasons stated, the order appealed from should be reversed with directions that the defendants in the court below be granted such time as to the chancellor may appear proper to answer the bill of complaint and that the cause do proceed for disposition in accordance with law and rules of practice. It is so ordered.

Reversed and remanded.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.

---

ON PETITION FOR REHEARING.

PER CURIAM.—Petition for re-hearing in this case calls our attention to the fact that in the original opinion we said in the 4th paragraph thereof,

"It was alleged that Nobles as Receiver of Stuart Bank & Trust Company was about to offer for sale and sell the principal note and also the notes, bonds and mortgages claimed to be held by the payee of the principal note and its successors as collateral, etc.",

when, in fact, the allegation is not made that the Receiver is about to offer for sale and sell the principal note. The language of the opinion should be modified so as to eliminate the words in the above quoted language, "the principal note and also". With these words eliminated, the opinion should stand and the petition for rehearing be denied. It is so ordered.

BUFORD, C.J. AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.