MANN, Judge.
To Man, the sophisticated scavenger, cash is carrion. Consider this chronology:
*398 April 16, 1966: Joseph Dennis Collins, a siding- salesman, registered in a motel at Gulf Breeze,’Escambia County, Florida, showing his address as 1131 Airline, New Orleans, Louisiana, died of a heart attack. He was found, by an acquaintance, lying between two beds, and could not be revived. In his wallet was a Georgia driver’s license, issued in 1964, which would expire in 1969, showing his address as 552 Ponce de Leon' Avenue, Atlanta, Georgia.
April 25, 1966: Frank Fuller, the County Administrator for Fulton County, Georgia, obtained temporary letters of administration from a Georgia court.
May 6,1969: The County Judge of Hills-borough County, Florida, authorized John Curtiss, as attorney for Frank Fuller, to enter Collins’ safe deposit box at the First National Bank of Tampa. The box contained a thousand-dollar bill and $15,000 in hundred-dollar bills.
June 6,1966: Frank Fuller filed in Georgia a petition showing that Joseph Dennis Collins, also known as Clarence Daniel Fal-vey and C. or G. Morancy, died a resident of Fulton County, Georgia, leaving an estate valued at $16,000. He alleged that he was entitled to letters because the estate was unrepresented and unlikely to be represented, that he had conducted a will search and had discovered neither a will nor heirs at law. Applying no special presumption that the bearer of so many good Irish names had died without heirs, the Judge of the Court of Ordinary in Fulton County .issued letters on the petition.
August 17, 1966: Ancillary letters of administration were issued by the County Judge of Hillsborough County, Florida, to Curtiss, whose appointment was consented to by Fuller.
August 30, 1966: The County Judge of Santa Rosa County, Florida, issued dom-icilary letters to Thomas Franklin West, an attorney, on the consent of a brother of the decedent, on allegations that Collins died a resident of Santa Rosa County.
April 20, 1967: Curtiss asked the Hills-borough County Judge for instructions, asking for authority to attack West’s letters in Santa Rosa County.
June 1, 1967: The Hillsborough County Judge said, “No,” orally, commenting that West ought to attack Curtiss’ letters in Hillsborough County.
November 26, 1968: The Santa Rosa County Judge issued, ex parte, an order directing Curtiss to turn over to West assets in Hillsborough County.
December 12, 1968: Curtiss asked for instructions in the Hillsborough County Judge’s Court.
January 7, 1969: Curtiss’ petition was heard, but the County Judge declined to enter an order.
February 17, 1969: The Santa Rosa County Judge ordered the First National Bank of Tampa to turn over to West the contents of the safe deposit box.
February 21, 1969: The First National Bank of Tampa filed an action in the Circuit Court of Hillsborough County, inter-pleading Curtiss and West and asking that it be ordered to pay the funds over to whomever is entitled.
March 19, 1969: The Santa Rosa County Judge issued a rule to show cause why the First National Bank of Tampa hadn’t turned over the money to West.
April 1, 1969: The Santa Rosa County Judge granted a continuance on pending matters.
April 17, 1969: The Circuit Judge to whom the interpleader action was assigned dismissed it for want of jurisdiction, stating,
“ * * * this Court is of the opinion that the ultimate matters sought to be determined are in the exclusive jurisdiction of the County Judge’s Court under Article V of the Constitution of *399 Florida and that all parties are before a County Judges’ Court and have adequate remedy in that forum.”
He didn’t define “that forum.”
April 25, 1969: Curtiss sought prohibition in the First District Court of Appeal, relying on temporal priority as establishing a want of jurisdiction in the Santa Rosa court.
June 17, 1969: The First District agreed that if the administration were domiciliary in Hillsborough County that temporal priority might justify prohibition on the basis of language in State ex rel. Campbell v. Chapman, 1941, 145 Fla. 647, 1 So.2d 278. In a scholarly opinion by Judge Rawls, the First District denied prohibition.[1]
July 30, 1969: Curtiss filed a petition for certiorari in the Supreme Court of Florida.
October 17,1969: Certiorari allowed.
February 10, 1970: Certiorari dismissed without opinion.[2]
February 17, 1970: Curtiss filed in the Circuit Court for Hillsborough County an action for injunction against the First National Bank of Tampa, specifically excluding many predictable demands for relief, but asking that the bank be enjoined from turning over the funds to the Santa Rosa administrator. The bank agreed to the temporary injunction and it was issued. The judge ordered Curtiss to make West a party.
February 19, 1970: A motion to dismiss was filed by “Domiciliary Administrator.” West had died in September, 1969, and Lewis, the relator here, was appointed administrator de bonis non. Curtiss moved to strike pleadings filed in the name of West. Lewis filed an amended motion to dismiss, attached a certified copy of his letters, and was duly, if clumsily, substituted.
June 22, 1970: Curtiss moved to add as a party defendant Milton S. Altschuler, doing business as Altschuler Genealogical Service, claiming that Altschuler has a contingent interest in the estate through contract with heirs. It also appears that a letter from West to Tom Brown, a Tampa attorney, dated April 21, 1967, discussed Altschuler’s interest and authorized Brown to confer with Curtiss toward no specific end. The matter of Altschuler’s interest was left hanging when this petition was filed by Lewis.
The above are allegations and statements contained in the record, and may or may not prove to be facts.
Lewis asks this court to issue a writ of prohibition. His contentions are basically two. The first is that assigned by the circuit judge in Hillsborough who dismissed the interpleader action: jurisdiction to determine probate matters lies exclusively in the county judge’s court. Like that judge, he doesn’t say which county judge’s court, but implies that if Curtiss wants to stop the Santa Rosa County Judge from proceeding he must come out there to do it. The second is that the dismissal of the interpleader action operated as an adjudication on the merits, no appeal having been taken.
The latter reason can be quickly disposed of. Res judicata is an affirmative defense [3] to be alleged in a court having jurisdiction over the parties and subject matter, and if the circuit court has jurisdiction, the place to allege that all this has been previously determined is in that court. Of course, Curtiss replies that a dismissal for want of jurisdiction is not an adjudication on the merits, but in our view of the case this argument is premature on both sides.
*400 The main question is whether there is jurisdiction in the circuit court to bring into it all of these contending parties and settle the matter. If there is jurisdiction, it is plain that Curtiss cannot .invoke it for his own purposes and exclude it for those things which he is not seeking. The argument submitted to the trial court and brought here in the record negates a petition for a lot of relief one might think logical :
“1. The Plaintiff in this action seeks no relief against the said Franklin West or his successor or his County Judge’s Court.
“2. The Plaintiff in this action seeks no order directed against the said Thomas Franklin West, his successor or his Probate Court.
“3. The Plaintiff in this action does not seek to invalidate the Letters of Administration of Mr. West or of his successor nor does the Plaintiff seek in any way to interfere with the probate administration now pending before the County Judge’s Court of Santa Rosa County, Florida for which Mr. West or his successor is responsible.
“4. The Plaintiff in this action seeks no adjudication whatsoever of the validity of Mr. West’s Letters of Administration. In fact, the Plaintiff does not even seek any final or ultimate determination of the ultimate validity of his own Letters of Administration beyond the finding by this Court that the Plaintiff’s Letters of Administration actually have been issued to him by the County Judges’ Court of Hillsborough County, Florida, and that that Court:
“A. Had general constitutional jurisdiction to issue ancillary letters of administration, and
“B. Made the requisite findings required by Section 734.31, Florida Statutes [F.S.A.] of the condition precedent to the exercise of that constitutional jurisdiction, and
“C. Has not revoked the said letters of ancillary administration.
“5. ‘Domicile’ is not an issue in this case. It could become an issue in a properly contested proceeding before a County Judge’s Court. However, it can in no way be an issue in the case at bar.”
All that Curtiss seeks is an order enjoining the bank from paying over to the Santa Rosa administrator and requiring it to pay over to him. No mention is made of protection for claimants in the Santa Rosa proceeding, or for determining whether in fact the Georgia letters, on which Curtiss’ ancillary letters depend, should have been issued in the first place. It is plain that Florida courts have the authority to determine the jurisdiction of a foreign court,[4] and if it is determined that Collins was not domiciled in Georgia, Cur-tiss’ letters must fall.
Much of the argument here has been directed to the question whether a county judge’s court issuing prior ancillary letters has jurisdiction, as a matter of law, prior to that of a court later issuing domiciliary letters. Curtiss’ complaint is carefully tailored to assert the strong points of his case without recognizing that equity jurisdiction, if it exists, exists to settle this entire case.
We think that there are numerous grounds of equity jurisdiction which warrant the denial of prohibition in this case.
It is difficult for us to understand how an equity court could consider and grant the relief Curtiss seeks without determining domicile, which he says is not an issue. It is, in fact, the crux of this case. The strange thing about this record is that the Santa Rosa administrators appear never *401 to have questioned Collins’ Georgia domicile, except to point out that he left some highly movable property in Florida when he died and that his brother applied for letters in Santa Rosa County. On the other hand, Fuller has said nothing about the suggestion that in fact Collins did leave heirs at law. Clearly somebody is entitled to this estate, and somebody is entitled to administer it. And certainly the First National Bank of Tampa is not obligated to ante up another $16,000 to keep both sides happy, nor is it under any duty to send its officers to one jail or the other — or both —for failure to choose sides in a dilemma.
The record does not suggest why Collins’ brother did not enter the proceedings initiated by Fuller and seek to supplant him as personal representative or perhaps even encourage him toward the end of speedy and economical administration. The institution of the Santa Rosa proceeding has made necessary reasonable compensation to the able counsel involved for work which would have been unnecessary had this predictable standoff been foreseen.
Equitable jurisdiction over interpleader where, as here, there is a distinterested stakeholder who wants an authoritative determination, binding on both sides, is beyond question except for the doubt raised by the dismissal of the bank’s action. Whether it is called interpleader or not, the bank is now a party to an equitable action in which the need for an authoritative and binding decision is too obvious to labor. Certainly the bank, asked by Curtiss to pay over to him as ancillary administrator, can seek the determination of the issues which of necessity underlie Curtiss’ right. We find no case precisely in point, but ample analogy.[5]
In Doggett v. Hart[6] Mr. Chief Justice Anderson quoted Story’s Equity Jurisprudence, quoting Lord Nottingham: “ When,’ said his Lordship, ‘this court can determine the matter, it shall not be a handmaid to the other courts, nor beget a suit to be ended elsewhere.’ ” It makes no sense to say that so long as each of these contending administrators is refused permission to go into the jurisdiction of the other there is no solution to this case. It is as if two Little League baseball teams were to go onto a playground and each were to take the field on separate diamonds. Both umpires could shout, “Batter up”, but without any authority. Such a situation would be childish petulance on the-playground. It is intolerable in a civilized legal system. A court of equity has ample authority to supervise the entire playground and make these litigants play ball, and after each side has been to bat it may determine the score. A court of equity may entertain one action not regularly within its jurisdiction where two actions have resulted in an impasse.
Prohibition denied.
McNULTY, J., concurs.
LILES, A. C. J., concurs in conclusion only.

. Curtiss v. McCall, Fla.App.1st 1969, 224 So.2d 354.

. Fla., 237 So.2d 533.

. Fla.E.Civ.P. 1.110(d), 30 F.S.A.

. See Biederman v. Cheatham, Fla.App.2d 1984, 161 So.2d 538; Loewenthal v. Mandell, 1936, 125 Fla. 685, 170 So. 169; Annot. 121 A.L.R. 1200.

. See Pepple v. Rogers, 1932, 104 Fla. 462, 140 So. 205; Riverside Bank of Jacksonville v. Florida Dealers and Growers Bank, Fla.App.1st 1963, 151 So.2d 834; Curtis v. Albritton, 1931, 101 Fla. 853, 132 So. 677; see also Annot., 121 A.L.R. 1200; Annot., 13 A.L.R. 498, on the general questions raised by multi-state probate conflict.

. 1853, 5 Fla. 215 at 231.